M988KOOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

KOOKMIN BANK CO., LTD,

                    Plaintiff,

            v.                          22 Cv. 5802 (GHW)

BEN ASHKENAZY,

                    Defendant.          Remote Conference

------------------------------x

                                        September 8, 2022
                                        2:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                        District Judge

                            APPEARANCES

MORRISON COHEN, LLP
     Attorneys for Plaintiff
BY:  Y. DAVID SCHARF
     AMBER R. WILL

KASOWITZ BENSON TORRES LLP
     Attorneys for Defendant
BY:  DAVID E. ROSS
     DAVID J. MARK
     DANIEL J. KOEVARY
     ANDREW W. BRELAND

M988KOOC

1        (The Court and parties appearing via teleconference)

2        (Case called)

3        THE COURT:  Let me turn to taking appearances from the

4    parties.

5        At the outset, I am going to ask the principal

6    spokesperson for each set of parties to introduce themselves

7    individually as well as the members of their team rather than

8    having each lawyer introduce him or herself.

9        So I will begin with counsel for plaintiff.  Who is on

10    the line for plaintiff?

11        MS. WILL:  This is Amber Will and Y. David Scharf from

12    Morrison Cohen for plaintiffs.

13        THE COURT:  Who is on the line on behalf of defendant?

14        MR. ROSS:  Good afternoon.  David Ross from Kasowitz

15    Benson Torres.  Also representing defendants are David Mark,

16    Daniel Koevary, and Andrew Breland.

17        THE COURT:  Let me begin by providing a few

18    instructions about the rules that I would like the parties to

19    follow during this conference.

20        At the outset, this is a conference that is a public

21    proceeding.  Any member of the public or press is welcome to

22    audit this conference.  I am not presently monitoring whether

23    third parties are auditing the conference.  So I just ask you

24    to keep that possibility in mind.

25        Second, please state your name each time that you

M988KOOC

speak.  You should do that even if you have spoken previously.

          Third, please keep your lines on mute at all times,
except when you're speaking to me or to another party.  Please
do that even if you don't think that there is background noise
wherever you may be.  We all just heard somebody's e-mail sound
an alert.  That kind of background noise will go away if
everybody puts their phones on mute.  So please do that, except
when you're intentionally communicating with a participant in
the conference.

          Fourth, I am instructing that the parties abide by
requests by our court reporter that are designed to help her do
her job.  She may ask you to pick up the handset or speak more
slowly.  Please try to abide by such request.

          Finally, I am ordering that there be no recording or
rebroadcast of all or any portion of today's proceeding.

          So, with that established, let's turn to the substance
of today's conference.  I scheduled this as a premotion
conference with respect to a proposed motion to dismiss on
behalf of Mr. Ashkenazy, defendant in this case.  I have read
both parties' letters.  I am happy to hear from each of you
about the issues that you expect to present to the Court in
connection with the motion.

          I will begin with counsel for defendant.

          Counsel, what would you like to tell me about your
anticipated motion?

M988KOOC

1              MR. ROSS:  David Ross, your Honor.

2         Thank you very much and good afternoon.

3         Our position is fully set forth in the August 29, 2022

4    letter that we filed with your Honor as document 13 in the

5    docket.

6         In sum and substance, the complaint is subject to

7    dismissal on probably five to eight separate grounds, but I

8    will cover the principal ones, and then I am happy to address

9    any issues your Honor may have.

10             First, the complaint doesn't state a claim for relief

11   as to the springing recourse claim, which is one of the two

12   claims in the case, because none of the alleged actions by Mr.

13   Ashkenazy constituted a consent or acquiescence in the

14   appointment of a, quote, custodian, close quote, for Union

15   Station.  And, as we set forth in our premotion letter, the

16   term "custodian" refers to a third party who is appointed to

17   have control over Union Station for the purpose of protecting

18   the rights of creditors.  And we believe that under the express

19   words that have been used in the springing guaranty, that no

20   custodian within the meaning of the guaranty provision has been

21   appointed or was acquiesced in or consented to by our client.

22             So, on the most fundamental basis, the basic term of

23   the springing guaranty hasn't been satisfied and, as a matter

24   of law, they could not win on that provision.

25             THE COURT:  Thank you.  Let me pause you on that,

M988KOOC

1    counsel.  You have seen the letter from plaintiff.  They say

2    that custodian is broader than you argue, notwithstanding the

3    language that surrounds or succeeds the claim there in clause

4    4.  How do you respond?

5             MR. ROSS:  Your Honor, there is, I don't think, any

6    reasonable basis to accept that proposition that a party such

7    as Jones Lang Lasalle, that had been providing back office

8    services, was a custodian within the meaning of the springing

9    guaranty provision under any hypothesis.  It simply had nothing

10   whatever to do with debtor-creditor-related issues with respect

11   to there being a custodian, receiver, trustee, or examiner,

12   which are a series of terms of art that are used in the

13   agreement in a particular way and are associated either with

14   bankruptcy procedure or proceedings for the benefit of

15   creditors.  Nothing associated with Jones Lang Lasalle's

16   performance of back office services had anything to do with the

17   custodian within the meaning of that provision, in our view.

18             THE COURT:  Thank you.

19             You have seen the argument in the letter that the

20   dictionary definition, they argue, is broader.  What is the

21   textual basis for me to read the language in the more limited

22   meaning?

23             MR. ROSS:  The textual basis is the plain meaning of

24   the words that are used, as they were used, number one.  Number

25   two, a classic canon of construction relates to interpreting a

M988KOOC

1    term based upon the terms that are used around it in a phrase,

2    such as it's used here.  So it needs to be understood in the

3    context in which it is being used.

4           So, classic canons of construction, your Honor, I

5    think defeat their effort to try to inject a dictionary

6    definition and pull into this the idea that a party that had

7    something to do with the operations of Union Station is a

8    custodian within the meaning of this provision.

9           THE COURT:  Thank you.

10          Just another brief question.  I of course know

11   something about the role of JLL as a result of the proceedings

12   that we had in the related case where facts were presented to

13   me about the nature of that entity's involvement in the

14   operation of the business.  Here, I will be looking to the

15   facts pleaded in the complaint in order to analyze any

16   potential motion to dismiss.  Can I ask you to just comment on

17   that question?  In other words, is there a sufficient basis in

18   the complaint as opposed to things that are not in the

19   complaint, integral to it, or incorporate in it that may be

20   pertinent to the motion that you expect to bring?

21          MR. ROSS:  Your Honor, I think that within the four

22   corners of the complaint, number one, there is sufficient

23   factual information regarding JLL for you to be able to

24   determine whether it is in the nature of a bankruptcy

25   custodian, or custodian appointed for the benefit of creditors,

M988KOOC

```
1    as opposed to somebody that performs office services at Union
2    Station.  Also, I think your Honor may be able to take judicial
3    notice based upon other filings for purposes of evaluating the
4    issue.
5              THE COURT:  Thank you.  I will ask you to examine that
6    question, namely, whether I can look at the substance of things
7    that are filed for the truth of the matter asserted as opposed
8    to the fact of the filings.  You will examine that before
9    making an argument that I can take judicial notice of facts
10   asserted in pleadings.
11             Thank you very much.
12             What is the next basis for the proposed motion or is
13   there anything else that you would like to talk about with
14   respect to the custodian issue?
15             MR. ROSS:  Yes, your Honor.
16             Second, our motion would be premised upon the
17   allegation in the complaint that the foreclosure essentially
18   resulted in a complete satisfaction of the loan at issue, the
19   mezzanine loan at issue.  And, based upon both the facts in the
20   complaint and, again, the facts available to the Court in
21   public filings by the plaintiff, there is no dispute that the
22   entire amount of the debt was represented to be a particular
23   number at the foreclosure sale, and according to plaintiff's
24   allegation, the sale was effected at that number.  So a full
25   satisfaction occurred, and accordingly, there is no obligation
```

M988KOOC

1    remaining under a springing guaranty in support of the

2    mezzanine obligation or recourse guaranty.

3          THE COURT:  Let me pause you on that.  You have seen

4    the plaintiff's letter.  They argue, among other things, that

5    the motion is premature on this point because the issue is

6    being disputed in the related case.  Is it disputed?

7          MR. ROSS:  Your Honor, I think that's not the right

8    question, if I may say so.  I am not ducking your question, but

9    like every motion to dismiss, we assume the facts are true as

10   pled by the plaintiff and evaluate the pleading on that basis.

11   I know they argue that there is some inconsistency, but we are

12   taking the pleading as they filed it.  They have asserted that

13   they effected the foreclosure at a particular price, and as a

14   result, we are saying that there is no claim on that basis

15   under the mezzanine loan guaranties, if that is true.

16         THE COURT:  Thank you.  Understood.  I just ask in

17   part because if there isn't a dispute about that, it may be

18   that the parties can work separate and apart from this motion

19   to resolve some of the issues presented in these cases.

20         Go on, counsel.  What is the other basis for the

21   motion?

22         MR. ROSS:  With respect to the recourse liability

23   claims that are asserted in connection with the mortgage loan,

24   they also fail as a matter of law because there is no

25   allegation that the mortgage lender sought to enforce the

M988KOOC

 1    mortgage loan, and as a result, it couldn't have been damaged

 2    by any of the alleged conduct that's alleged in the complaint.

 3              And, also, the foreclosure took place, and as a

 4    result, the collateral, your Honor, was transferred.  As a

 5    result of the condemnation action, there was a transfer of the

 6    ownership interest with respect to the collateral, and

 7    accordingly, there was no interest that the mortgage lender had

 8    that could be damaged following the condemnation.

 9              So, again, we think as a matter of law the claims

10    under the mortgage loan guaranty also fail as a fundamental

11    matter.

12              THE COURT:  Can I ask you to just repeat that

13    argument.  I apologize.  Would you mind just restating the

14    grounds?

15              MR. ROSS:  Sure.  Your Honor, the recourse liability

16    claims that were asserted in connection with the mortgage loan

17    fail as a matter of law because there is no allegation that the

18    mortgage lender sought to enforce the mortgage loan, and it

19    couldn't have been damaged as a result of the claimed

20    wrongdoing by Ashkenazy in the complaint.

21              Separate and apart from that, there couldn't have been

22    any damage because of the condemnation itself.  And, as a

23    result of the condemnation, the mortgage lender no longer had

24    any interest in Union Station and couldn't have been damaged by

25    the claimed conduct.

M988KOOC

1              THE COURT:  Thank you.

2              You have seen in the opposing letter the argument, in

3      essence, that there are obligations in addition to the payment

4      obligations under the mortgage loan agreement.  How do you

5      respond to that portion of the plaintiff's response?

6              MR. ROSS:  Your Honor, I don't think that there are

7      any allegations in the complaint that give rise to causes of

8      action where the mortgage lender hasn't sought to enforce the

9      mortgage and has no further interest in the mortgage.  So, in

10     sum and substance, I think that's the shortest way to get at

11     it.

12             THE COURT:  Thank you.

13             I may come back to you on this.  Anything else about

14     the grounds for the proposed motion that you would like to

15     share before I turn to counsel for plaintiff?

16             MR. ROSS:  Your Honor, on the third page of our August

17     29 letter, we detailed a number of additional grounds that

18     independently require dismissal of these claims.  And just

19     briefly, a few of them are:  A failure to allege that the

20     lender relied on any of our alleged statements by the defendant

21     or his representatives.  Also, the statements complained of, in

22     large measure, are privileged statements that occurred during

23     legal proceedings and setting forth positions, and we don't

24     think those could give rise to actionable claims.  We also

25     don't think that the statements that are identified constitute

M988KOOC

1  negligence or similar misconduct within the meaning of the

2  terms that are used in the recourse provisions.

3           So, there are a handful of others, but those are

4  principally the grounds on which we believe the entire

5  complaint is subject to dismissal on one basis or another.

6           THE COURT:  Thank you.

7           Which are the privileged statements?  Would you mind

8  taking a moment just to point me to them in the complaint?

9           MR. ROSS:  Your Honor, hold on one second.  Let me see

10  if I can find the paragraphs.

11           If one of my colleagues can chime in and help on that

12  basis, I would appreciate it.  I am just thumbing through, your

13  Honor.

14           Your Honor, I am not finding it immediately.  So we

15  will come back to it.  But clearly there are allegations about

16  statements that have been made in court filings in the

17  condemnation proceeding.

18           THE COURT:  Thank you.  Good.  Understood.  Thank you

19  very much.  I will either come back or I am happy to just wait

20  until I see this in the briefing.

21           Let me turn to counsel for plaintiff.

22           Counsel, you have heard the grounds for the proposed

23  motion just articulated by counsel.  I have seen your letter.

24  This is not oral argument with respect to the motion.  Still,

25  if there is anything that you would like to tell me about the

M988KOOC

1    anticipated argument that you are going to present in

2    opposition to these positions, I am going to give you the

3    opportunity to do so now.

4              Counsel.

5              MS. WILL:  Thank you.  This is Amber Will for

6    plaintiff.

7              We would refer back to the letter that was filed on

8    September 6 that your Honor referenced, document number 15.  We

9    believe that all of our arguments in opposition address

10   defendant's claims that the complaint should be dismissed on

11   all of the counts, and that we have adequately pled both a

12   springing recourse event as well as recourse liabilities under

13   both guaranties in this action.

14             To prevent myself from just repeating kind of all of

15   the discussion that has already been previously stated, I am

16   happy to answer any questions that the Court may have or just

17   kind of do a quick summary of our argument.

18             THE COURT:  Thank you.  I welcome a summary of your

19   arguments.

20             Let's start with the first issue, which is the

21   springing recourse event.  Why should I read custodian in the

22   sort of generic way that you advocate for, particularly in

23   light of the language that succeeds the term "custodian" in

24   clause 4, and, frankly, all of the clauses in 1 through 5,

25   which appear generally to relate to insolvency-related defense,

M988KOOC

1    and, arguably, 6, which is about its special-purpose nature.

2              MS. WILL:  Of course.

3              So, we agree with defendant on the fact that many of

4    the clauses in the springing recourse provision refer to the

5    bankruptcy code or bankruptcy law.  In clauses 1 through 3 and

6    5 through 6, there are specific references to U.S. Bankruptcy

7    Code or the bankruptcy law when that kind of limitation is

8    supposed to be applied.  In clause 4, which this claim is

9    based, there is not that same limitation.  There is the use of

10   the word custodian, receiver, trustee, or examiner, but it is

11   not limited in the bankruptcy context.  If the parties wanted

12   to limit the provision in clause 4 to the bankruptcy context,

13   they simply could have done so.  They did so in clauses 1

14   through 3.  They did so in clauses 5 through 6.  And so, based

15   on contractual construction, plaintiff submits that clause 4

16   was meant to be read differently, in that the limitation of

17   custodian in the bankruptcy context should not apply.

18             And by that reasoning, we can look to a broader term

19   for custodian, in which courts have looked to the Black's Law

20   Dictionary, looked to Miriam Webster, Oxford English

21   Dictionary, to see what custodian really entails.  And under

22   the facts of this case, JLL, as the property manager for Union

23   Station, falls within that definition of custodian.

24             THE COURT:  You're arguing that the springing recourse

25   event was intended to be triggered whenever the borrower hired

M988KOOC

1   somebody who was a custodian, in other words, somebody who

2   cleans up?  Is that the way I should interpret that provision?

3   Because a custodian is a person with that kind of a job, that's

4   the type of event that should trigger a springing recourse

5   event?

6        MS. WILL:  Is your Honor referring to a custodian in

7   terms of a janitorial custodian for cleaning up purposes or

8   more broadly?

9        THE COURT:  Yes.  A janitorial custodian.

10       MS. WILL:  No, your Honor.  We wouldn't say that the

11   limitation for custodian is specific to that kind of

12   profession.  We are looking at definitions in which a person or

13   institution has charge or custodian of a property, or a

14   custodian that is often in charge of a building when a landlord

15   is absent, those kind of things.  It's greater than just a

16   janitorial custodian that would be sweeping the floors or

17   cleaning up Union Station.  But that is not what JLL was doing

18   at Union Station.  JLL is the property manager of the station

19   and had a much greater role in managing the property.

20       Also, looking at clause number 4, it's not just when

21   the borrower or Ashkenazy hired a custodian; it was when they

22   consented to or acquiesced to the appointment of a custodian

23   that was against lender's direction.  And the way that this

24   comes to play, the springing recourse event, lender had

25   terminated JLL under its rights under the loan documents, and

M988KOOC

1   then Ashkenazy had consented to Amtrak's request to keep JLL in

2   place, and that difference, going against lender's request, is

3   what triggered that springing recourse event.

4           THE COURT:  So, if the term "custodian" could mean a

5   janitor, but you argue it should not be read to have that

6   meaning, what is the basis for me to conclude that it means

7   someone who has charge or custody of the property and not to

8   mean custodian in the sense of a janitorial custodian?

9           MS. WILL:  Your Honor, we would just look to the plain

10  meaning of the definition.  And looking to Black's Law

11  Dictionary specifically, it defines custodian as a person or

12  institution that has charge or custody of a property.  And so

13  we would apply that meaning.  But Miriam Webster's definition

14  and Oxford's English Dictionary's definition also kind of all

15  fall within that same reasoning, that the Court can find that

16  JLL served as a custodian in this manner.

17          THE COURT:  Thank you very much.

18          Please proceed.

19          MS. WILL:  Thank you, your Honor.

20          In reference to Ashkenazy's argument that the payment

21  of the mezzanine loan in full pursuant to the foreclosure sale

22  precludes the recourse liability in this case, we think, as

23  stated in the letter, that it is premature to dismiss the claim

24  on that ground given that Ashkenazy continues to challenge the

25  validity of the foreclosure action in the related proceeding

M988KOOC

1   before this Court.

2            Regardless, the foreclosure sale did not cover the

3   other costs or expenses that are related to Ashkenazy's

4   misrepresentations, willfulness conduct and obstruction, which

5   Ashkenazy remains liable for under the recourse liabilities.

6            THE COURT:  Understood.

7            Let me ask counsel about the argument presented by

8   counsel for defendant, namely, the argument that for purposes

9   of evaluating the proposed motion to dismiss, I should accept

10  the facts as pleaded as true regardless of what I know to be a

11  contested issue from the other case.  In other words, that I

12  should accept the fact that the underlying loan was discharged

13  as a fact because it's pleaded, or, as I understand, he asserts

14  it's pleaded in the complaint.  How do you respond to that

15  argument?

16           MS. WILL:  Yes.  We would argue that the Court can

17  take judicial notice of Ashkenazy's challenge in the other

18  related action to the validity of the foreclosure sale.

19  Otherwise, if the Court wishes that we amend the complaint, we

20  can always amend the complaint to specify that the validity of

21  the foreclosure is still being challenged by Ashkenazy, which

22  is why the springing recourse event is alleged here.

23           THE COURT:  Understood.

24           Just for context, I understand that the argument or

25  your contention is that the complaint, to the extent it pleads

M988KOOC

satisfaction of the loan, is referring to satisfaction of the

principal amount of maybe interest due on the loan.  Can you

just tell me the nature of the other obligations that you

assert to be pleaded as having not been satisfied?

MS. WILL:  Yes.  The foreclosure sale would effect the

principal amount owed under the mezzanine loan, but not the

mortgage loan.  The mortgage loan had the principal amount of

$330 million, and with the addition of interest and other costs

and expenses related to the mortgage loan, that has increased

in value, which I believe has been submitted to this Court in

our pretrial filings for the pretrial conference that is to be

held next week.

The other obligations that are alleged in the

complaint deal with the costs and expenses related to enforcing

lender's rights under the mezzanine loan, as well as it relates

to the mortgage lender and the mortgage borrower under the

mortgage loan.  Those costs and expenses can include attorneys'

fees and, as referenced in the complaint, there has been

numerous litigations, motions, things that lender has had to

pursue because of Ashkenazy's interference.  This goes from the

answer filed in the condemnation proceeding, the motion to

strike filed in the condemnation proceeding, the declaratory

judgment that lender had to bring before this Court regarding

the foreclosure sale and the validity thereof.  All of those

costs are reflected by lender's exercise of rights under the

M988KOOC

1    mortgage and mezzanine loan documents, which is what Ashkenazy

2    is liable for based on the guaranty.

3            THE COURT:  Thank you.  That is based on the

4    borrower's recourse liabilities definition, is that right, in

5    the loan agreement?

6            MS. WILL:  Correct, your Honor.

7            THE COURT:  Can you point me to the specific subclause

8    or subclauses that are the basis for that contention?

9            MS. WILL:  Yes, your Honor.

10           In 11.22 of the mezzanine loan agreement and the

11   mortgage loan agreement is where the exculpation clause is.

12   And that identifies the borrower's recourse liabilities, which

13   goes through the intentional material misrepresentations under

14   clause 1, the willfulness conduct under clause 2, and the other

15   legal proceedings relating to the debt that were filed by

16   borrower, mortgage borrower, or guarantor under clause 14.  And

17   under those triggering events, the guarantor would be liable

18   for any actual loss, actual damage, cost, expense, actual

19   liability, claim, or other actual obligation incurred by

20   lender.  And those definitions of borrower's recourse

21   liabilities is brought into the guaranty language.

22           THE COURT:  Thank you.  Understood.

23           Please proceed.

24           MS. WILL:  Thank you.

25           Under the loss recourse liability specifically, the

M988KOOC

1    last section that defendant addressed, lender would argue that

2    we have not alleged fraud in this case.  We have alleged the

3    material misrepresentations, which is a separate clause in the

4    recourse liabilities.  So we do not need to satisfy the higher

5    pleading standard in this case.  The "or" in that provision is

6    disjunctive, which present two different choices, which

7    identifies intent by the parties that they should be treated

8    differently and that there doesn't need to be a higher pleading

9    standard met in this case.

10         The argument that statements made in judicial

11   proceedings are privileged is true against tort claims, but

12   here lender is merely trying to enforce a breach of contract

13   claim, and so that privilege does not apply.

14         Then, with the argument that the complaint does not

15   allege willful misconduct or gross negligence adequately, we

16   would argue that there has been numerous allegations contained

17   within the complaint that identify Mr. Ashkenazy's

18   interference, misrepresentations, directions to third parties

19   to ignore lender, withhold information from lender, and

20   continue to act as if the foreclosure sale did not happen.

21   Those actions are willful misconduct, if not gross negligence,

22   at the very least.

23         Then, lastly, the argument that the answer and motion

24   to strike does not fall within the other legal proceedings

25   language in clause 14.  We think that that language is broad

M988KOOC

1    enough to include the filings that were done in the

2    condemnation action to justify recourse under the obstruction

3    provision.

4         THE COURT:  Thank you very much.

5         I am going to turn to counsel for Mr. Ashkenazy.

6    Again, this is not oral argument, but if there is anything that

7    you would like to offer in response to the contentions just

8    forwarded by plaintiff's counsel, I would like to give you the

9    opportunity to do that now.

10        Counsel, is there anything?

11        MR. ROSS:  Yes, your Honor.

12        First of all, I just want to double back.  The

13   paragraphs that your Honor asked me about, which involved

14   statements specifically made in litigation filings, are at the

15   following paragraphs of the complaint:  41, 49, 52, 58, and 73.

16        I won't try to address all of the arguments that

17   counsel just went through because they are already addressed in

18   one way or another in our filing with your Honor at document 13

19   in some detail.  But, basically, the custodian provision that

20   we discussed, and that your Honor asked Ms. Will questions

21   about, I think demonstrates the very point that the context and

22   nature of the provisions that are the subject of the springing

23   guaranty in paragraph 4 thereof are addressed to a

24   creditor-debtor context and not to a property manager who is

25   under contract to provide office services to Union Station.  I

M988KOOC

1    just think that is obviously not the context in which this

2    springing guaranty was intended to come into effect.

3          Second, counsel talked about and I think inadvertently

4    confused the issues under the mezzanine loan with the mortgage

5    loan.  They are not one and the same.  The allegations of

6    wrongdoing are all in the context of the mezzanine loan.  And

7    if the mezzanine loan was extinguished, then those allegations

8    have no bearing on the mortgage loan, where there has been no

9    effort to enforce the mortgage loan.

10          With respect to the concept that obligations remained

11    outstanding under the mezzanine loan after the foreclosure was

12    allegedly effected and the note satisfied, generally speaking,

13    one can't get more than the satisfaction of the outstanding

14    obligation.  If there had been an outstanding obligation, it

15    wasn't set forth in the context of the foreclosure.  And it was

16    said that the note was fully satisfied.  You can only get one

17    satisfaction.  So the idea now that legal fees or costs or

18    expenses can still be recovered we think is inconsistent with

19    the record.

20          The idea that plaintiff would like to change its

21    pleading to say that it's disputed that the foreclosure was

22    effective is surprising, given all the filings that they have

23    made with the Court in the related proceeding, and I think

24    contrary to their position.  So, again, we are relying on

25    exactly the claim that was pled, and I think a standard

M988KOOC

```
1    12(b)(6) motion assumes the truth of the facts as pled, well
2    pled facts.
3              I have specific points that I could -- well, your
4    Honor, I think that principally covers it.
5              THE COURT:  Thank you very much.
6              Just a couple of brief notes.  One, I have made this
7    observation as an aside in the related case.  I will raise it
8    again as an aside now, perhaps with an issue that the parties
9    have views about but that haven't been flushed out yet.
10   Namely, what is the effect on the nature of the outstanding
11   obligations under the loan agreement following as part of a
12   foreclosure sale that plaintiff alleges here satisfied the
13   principal amount of the outstanding obligations?  The parties
14   are commenting about what the effect of that sale is in the
15   credit bid in terms of the continuing effect, I will call it,
16   of the underlying loan agreement.  But at this point I haven't
17   yet seen much law on that question.  I raise this briefly in
18   the context of the, I will call it, tail effect of the
19   covenants in the loan agreement, but it may be pertinent here
20   with respect to the question about continuing obligations that
21   may be owing by the guarantor.  In any event, that's just as an
22   aside.
23             As a second aside, counsel, we are going to have a
24   conference next week.  That's an initial pretrial conference
25   with respect to the case.  As I understand it, at that point I
```

M988KOOC

1   will be confronted by a threshold issue regarding whether or

2   not to stay the discovery in the case pending briefing and

3   resolution of that motion.  I am going to defer a determination

4   on that question until that conference.  But I appreciate very

5   much your arguments here will inform my assessment of any

6   application to effectively stay discovery here, which I

7   understand to be the request, as embedded in the proposed case

8   management plan.

9        The other third aside, with apologies, is a note about

10  the upcoming initial pretrial conference.  Just an issue that I

11  hope to discuss, at least in part, at this upcoming conference,

12  which is I just want to make sure that we have on the table the

13  possibility of discussing whether there is an advice of counsel

14  defense that the defendant is going to put forth here with

15  respect to the contentions that he acted in bad faith.  I don't

16  know to what extent that is an issue here, but it's an issue

17  that I think we should have in front of us, given potential

18  privilege issues and the like, as we frame our discovery

19  protocol going forward.  Again, that's not an issue for today,

20  but an issue I just wanted to note because it will require a

21  little bit of advance thought, but I think it's implied by the

22  bad faith contention based on clause 14 of 11.22 in the loan

23  agreement.

24       For now, let me limit myself to setting a schedule for

25  briefing of the motion.  Again, I will take up the application

M988KOOC

1      to stay during our proceeding next week.

2                  Counsel for defendant, when would you propose to file

3      your motion?

4                  MR. ROSS:  Your Honor, by September 22, two weeks from

5      today.

6                  THE COURT:  That's fine.  Thank you.

7                  So, I am going to set the following schedule, and I am

8      going to set what I am going to describe as the default

9      schedule.  The parties know the rule provides plaintiff the

10     opportunity to amend the complaint within 21 days after the

11     filing of a motion.  For that reason, I am going to set the

12     opposition date as three weeks or 21 days following the service

13     of the motion.

14                 So the motion itself is due no later than September

15     22.  Any opposition is due no later than three weeks following

16     the date of service of the motion.  Any reply is due no later

17     than one week following the date of service of any opposition.

18     I will enter an order establishing that schedule shortly after

19     today's conference, and I look forward to talking with you next

20     week and discussing, among other things, the application to

21     stay discovery pending briefing and resolution of the motion.

22     There, as you should expect, I expect to evaluate whether or

23     not there is good cause for a stay under governing legal

24     principles.  So I look forward to hearing your arguments on

25     that topic.  Again, thank you for your arguments here.  It will

M988KOOC

1    be informative as I consider that application.

2              Anything else that we should take up here?

3              Let me begin with counsel for defendant.

4              MR. ROSS:  No, your Honor.  Thank you very much.

5              THE COURT:  Counsel for plaintiff.

6              MS. WILL:  No, your Honor.  Thank you.

7              THE COURT:  Thank you very much.  This proceeding is

8    adjourned.

9              (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25