# KASOWITZ BENSON TORRES LLP

|  |  |  |
|---|---|---|
| DAVID E. ROSS<br>DIRECT DIAL: (212) 506-1748<br>DIRECT FAX: (212) 835-5048<br>DRoss@kasowitz.com | 1633 BROADWAY<br>NEW YORK, NEW YORK 10019<br>(212) 506-1700<br>FAX: (212) 506-1800 | ATLANTA<br>HOUSTON<br>LOS ANGELES<br>MIAMI<br>NEWARK<br>SAN FRANCISCO<br>SILICON VALLEY<br>WASHINGTON DC |

November 3, 2022

**VIA ECF**
Hon. Gregory H. Woods
United States District Court
Southern District of New York,
500 Pearl St.
New York, NY 10007-1312

   Re: *Kookmin Bank Co. Ltd. v. Ben Ashkenazy*, No. 1:22-cv-5802-GHW

Dear Judge Woods:

  We represent Defendant Ben Ashkenazy ("Ashkenazy") in the above-referenced action. Pursuant to Rule 2(C) of Your Honor's Individual Rules of Practice in Civil Cases, we write to request a pre-motion conference in connection with Ashkenazy's anticipated motion, pursuant to Fed R. Civ. P. 12(b)(6), to dismiss the amended complaint [ECF No. 27] (the "AC") in the above-referenced action. While Plaintiff filed the AC in response to Defendants' previous motion to dismiss, the amendment does not cure the deficiencies identified in Ashkenazy's first pre-motion letter or in the motion to dismiss. Thus, the AC is subject to dismissal and the grounds for that motion are set out below.[1]

  The AC seeks damages of more than $600 million pursuant to two guarantees executed by Ashkenazy in connection with the financing of the ground lease for Washington Union Station ("Union Station"). One guaranty (the "Mortgage Loan Guaranty") was made in connection with a mortgage loan (the "Mortgage Loan") to Union Station Investco, LLC ("USI") which was secured by a mortgage on Union Station. The second guaranty (the "Mezz Guaranty" and, together with the Mortgage Loan Guaranty, the "Guaranties") was executed in connection with a mezzanine loan (the "Mezz Loan"; together with the Mortgage Loans, the "Loans") to Union Station Sole Member, LLC ("USSM"; together with USI, the "Borrowers") which was secured by a pledge of USSM's membership interests in USI. The agreements documenting these Loans (the "Loan Agreements") generally provide that the Loans are non-recourse to the Borrowers unless an event occurs which triggers one of the enumerated "Recourse Obligations." The Guaranties, in turn, guaranty the payment of Recourse Obligations of the respective Loans. Accordingly, Plaintiff can only seek a money judgment against Ashkenazy as guarantor if a recourse event has occurred under one of the Loans.

---

[1] Due to page limitations on this submission, Ashkenazy reserves the right to make additional arguments not set out here, including those in his original motion to dismiss, in response to the AC.

KASOWITZ  BENSON  TORRES LLP

Hon. Gregory H. Woods
November 3, 2022
Page 2

The Loan Agreements, governed by New York law, contain two types of recourse events: a "Springing Recourse Event" and a "Borrower's Recourse Event."  If a Springing Recourse Event occurs, Plaintiff may potentially assert a claim for the full amount due under the respective Loans.  If a Borrower's Recourse Event occurs, the lender may potentially assert a claim for its actual damages in connection with that event.

*First,* the AC's first and second causes of action (which are substantially identical) allege that a Springing Recourse Event occurred under each of the Mortgage Loan and Mezz Loan because Ashkenazy, through counsel, consented to the continued retention of Jones Lang LaSalle Americas, Inc. ("JLL") as "property manager" as part of the pending condemnation proceeding in the District of Columbia (the "Condemnation Proceeding") after Plaintiff purported to exercise rights under the Mezz Loan Agreement.  AC ¶¶ 89-116.  Plaintiff argues that this consent was equivalent to Ashkenazy "consent[ing] to . . . an application for the appointment of a custodian."  AC ¶ 41 (quoting section 11.22 of the Loan Agreements).  A plain reading of the Loan Agreements demonstrates, however, that none of the alleged conduct triggered the Springing Recourse provisions because neither Ashkenazy nor JLL is a "custodian" and no "application for the appointment of a custodian" was made by anyone.

While the Loan Agreements do not provide a definition of "custodian," the plain language of the contracts demonstrates that "custodian" means an individual who takes control of Union Station pursuant to a bankruptcy or similar proceeding.  Indeed, Section 11.22 of the Loan Agreements refers to "the appointment of a custodian, receiver, trustee, or examiner."  These terms are commonly used in bankruptcy and similar proceedings to refer to an individual appointed by a court or otherwise installed to protect creditors' interests.  And, the other Springing Recourse Events in Section 11.22, described in clauses (1) through (5) of that provision, all relate to a bankruptcy or similar proceeding concerning the "Borrower."  This reading also is corroborated by the Loan Agreements' definition of a "Bankruptcy Action," which is one of the other few instances in the Loan Agreements where the word "custodian" appears, and which largely tracks clauses (1) through (5) of the Springing Recourse provision.  Further support is provided by the definition of "Custodian" contained in the Bankruptcy Code and cases interpreting "custodian" in the bankruptcy context.  *See, e.g.*, 11 U.S.C. § 101(11); *DePaola v. Hollingsworth (In re Transp. Mgmt., Inc.)*, 278 B.R. 226, 235 (Bankr. M.D. Ala. 2002) (shareholders and former employees of debtor were not "custodians" because "they were not appointed trustee or receiver in any case; they were not assignees under a general assignment for the benefit of [debtor's] creditors; nor were they appointed to enforce a lien against [debtor] or to administer the property of [debtor] for the benefit of creditors").  Likewise, Plaintiff has not properly alleged that any party made "an application for the appointment of a custodian" as that is plainly understood, since, even if JLL could have been a custodian, no party sought to appoint JLL to any role or made any other application to appoint JLL.  Accordingly, the first and second causes of action must be dismissed because no Springing Recourse Event occurred.

*Second*, both the second and fourth causes of action in the AC must be dismissed because they assert claims under the Mezz Guaranty.  The AC, and the documents incorporated therein

KASOWITZ BENSON TORRES LLP

Hon. Gregory H. Woods
November 3, 2022
Page 3

and integral to it, allege that the Mezz Loan was paid in full through a full credit bid at Plaintiff's foreclosure sale. *See* AC ¶¶ 27, 116. The transcript of the foreclosure sale confirms that Plaintiff's credit bid was equal to the full amount of the Mezz Loan then outstanding, including all interest, fees, and penalties. Because the Mezz Loan debt was fully satisfied, Plaintiff is not entitled to seek additional recourse from Ashkenazy under the Mezz Loan. *See U.S. Bank Nat'l Ass'n v. Lightstone Holdings LLC*, 66 Misc. 3d 1232(A), at *8 (Sup. Ct. N.Y. Cty. Mar. 10, 2020), *aff'd*, 196 A.D. 3d 445 (1st Dept. 2021) (holding that lender was not "entitled to be made whole by mortgage foreclosure sales and related recoveries on the underlying debt and nevertheless reap a windfall and potential double recovery under a guaranty"); *Sweeters v. Hodges*, 256 A.D.2d 185, 185 (1st Dep't 1998) ("A guarantor is liable to the creditor only for the amount of the principal obligor's default."). And, any fees allegedly incurred after the putative foreclosure sale were incurred by another entity, Daol Rexmark Union Station LLC, which allegedly now holds the Mezz Loan collateral but which is not a party to this action or either of the Guaranties. Thus, the causes of action related to the Mezz Guaranty must be dismissed.

*Third,* the third cause of action, asserting Borrower Recourse liability in connection with the Mortgage Loan, must be dismissed for failure to allege damages. Each properly alleged instance of a "misrepresentation" or "misconduct" occurred after Amtrak commenced the Condemnation Proceeding. The effect of filing the Condemnation Proceeding was to vest title to the leasehold interest in Union Station to Amtrak free and clear of the mortgage held by Mortgage Lender. Accordingly, from then on, Mortgage Lender held no interest in Union Station and could not have been damaged by any of the alleged conduct. The allegations of "misrepresentations" and "misconduct" further demonstrate that there can be no damages under the Mortgage Loan because each relates to exercise of control over USI, to which Plaintiff claims to be entitled based on its exercise of Mezz Loan rights. *See* AC ¶¶ 121, 123.

*Finally,* the third and fourth causes of action, alleging liability for Borrower's Recourse Events fails on numerous other grounds. For example, to the extent the claim is based on the "Misrepresentation Provision," AC ¶¶ 121, 132, it fails because Plaintiff does not plead a false statement of fact or reliance. *See Brown v. Lower Brule Cmty. Dev. Enter. LLC*, 2014 WL 5508645, at *5 (S.D.N.Y. Oct. 31, 2014), *aff'd*, 606 F. App'x 626 (2d Cir. 2015) (dismissing claims under a similar guaranty for failure to plead all of the elements of common law fraud including reliance). Moreover, there can be no liability for alleged misrepresentations made in court proceedings. *See Geer v. Gates Chili Cent. Sch. Dist.*, 321 F. Supp. 3d 417, 423 (W.D.N.Y. 2018) ("It has long been established under New York law that statements uttered in the course of a judicial proceeding are absolutely privileged, as long as such statements are material and pertinent to the questions involved in the proceeding.") (internal citations omitted), *aff'd* 768 F. App'x 55 (2d Cir. 2019).

Because the grounds for dismissal are substantially similar to those Ashkenazy previously raised in connection with Plaintiff's original complaint, to the extent the Court believes a pre-motion conference is not necessary, Ashkenazy requests two weeks from any order setting a briefing schedule to file his motion to dismiss.

K ASOWITZ  B ENSON  T ORRES LLP

Hon. Gregory H. Woods
November 3, 2022
Page 4

    Respectfully,

    /s/ *David E. Ross*

    David E. Ross

cc: All counsel of record (via ECF)