**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KOOKMIN BANK CO., LTD., in its capacity as Trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its Agent in the United States, REXMARK HOLDINGS LLC d/b/a REXMARK, <br><br> Plaintiff, <br><br> v. <br><br> BEN ASHKENAZY, <br><br> Defendant. | Civil Action No.: 1:22-cv-05802 (GHW) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BEN ASHKENAZY'S MOTION TO DISMISS THE AMENDED COMPLAINT

David E. Ross
David J. Mark
Daniel J. Koevary
Andrew W. Breland
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

*Attorneys for Defendant Ben Ashkenazy*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. 2

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................. 4

    I.     Events Giving Rise To This Action ...................................................................... 4

    II.    The Loan Documents ........................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.     The Amended Complaint Fails To State A Claim For Breach Of The Loan Guaranties' Springing Recourse Provisions ........................................................ 9

    II.    The Amended Complaint Fails As To The Mezz Loan Because The Mezz Loan Has Been Satisfied ................................................................................... 14

    III.   The Amended Complaint Fails To State A Claim For Breach Of The Recourse Obligations ...................................................................................... 17

        A.     The Amended Complaint Does Not—And Could Not Plausibly— Allege Damages Relating To The Mortgage Loan. ................................. 17

        B.     The Amended Complaint Fails To Plead That The Recourse Liabilities Provisions Were Triggered ................................................... 21

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*665-75 Eleventh Ave. Realty Corp. v. Schlanger*,
   265 A.D.2d 270 (1st Dep't 1999) ............................................................8

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
   18 N.Y.3d 675 (2012) ............................................................24

*Aguirre v. Best Care Agency, Inc.*,
   961 F. Supp. 2d 427 (E.D.N.Y. 2013) ............................................................23

*Allaire Corp. v. Okumus*,
   433 F.3d 248 (2d Cir. 2006) ............................................................8

*Anschutz Corp. v. Merrill Lynch & Co.*,
   690 F.3d 98 (2d Cir. 2012) ............................................................22

*Bell Atl. Corp v. Twombly*,
   550 U.S. 544 (2007) ............................................................8

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
   949 F. Supp. 2d 486 (S.D.N.Y. 2013) ............................................................21

*Brown v. Lower Brule Community Dev. Enterprise LLC*,
   2014 WL 5508645 (S.D.N.Y. Oct. 31, 2014),
   *aff'd*, 606 Fed. Appx. 626 (2d Cir. 2015) ............................................................21

*Carolina Cas. Ins. Co. v. Cap. Trucking, Inc.*,
   523 F. Supp. 3d 661 (S.D.N.Y. Mar. 5, 2021) ............................................................22

*Charid Properties, Inc. v. Berger*,
   37 A.D.2d 987 (1971),
   *aff'd*, 32 N.Y.2d 667 (1973) ............................................................22

*Chicago Title Ins. Co. v. Brookwood Title Agency, LLC*,
   179 A.D.3d 887 (2d Dep't 2020) ............................................................9

*DePaola v. Hollingsworth (In re Transp. Mgmt., Inc.)*,
   278 B.R. 226 (Bankr. M.D. Ala. 2002) ............................................................13

*Fierro v. City of New York*,
   2022 WL 428264 (S.D.N.Y. Feb. 10, 2022) ............................................................6

*Geer v. Gates Chili Cent. Sch. Dist.*,
    321 F. Supp. 3d 417 (W.D.N.Y. 2018),
    *aff'd sub nom., Geer v. Emp. Health Referral Sys., Inc.*, 768 F. App'x 55 (2d Cir. 2019)......23

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006)....................................................................................6

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)......................................................................................8

*Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Techs. Worldwide, Inc.*,
    2013 WL 4931649 (S.D.N.Y. Sept. 12, 2013)......................................................10

*In re Kennise Diversified Corp.*,
    34 B.R. 237 (Bankr. S.D.N.Y. 1983) ...................................................................13

*Knick v. Twp. of Scott, Pennsylvania*,
    139 S. Ct. 2162 (2019)...........................................................................................17

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
    255 F. Supp. 3d 443 (S.D.N.Y. 2015),
    *aff'd,* 650 F. App'x 70 (2d Cir. 2016)..................................................................12

*Mumin v. Uber Techs., Inc.*,
    239 F. Supp. 3d 507 (E.D.N.Y. 2017) ..................................................................21

*Parrella v. Orange Rabbit, Inc.*,
    2021 WL 4462809 (S.D.N.Y. Sept. 29, 2021).......................................................10

*S. Shore Fed. Sav. & Loan Ass'n v. Mikarp Realty Corp.*,
    100 Misc. 2d 196 (N.Y. Sup. Ct. Suff. Cnt'y Feb. 24, 1978),
    *aff'd,* 65 A.D.2d 620 (2d Dep't 1978) .................................................................16

*Singh v. NYCTL 2009-A Tr.*,
    2016 WL 3962009 (S.D.N.Y. July 20, 2016),
    *aff'd*, 683 F. App'x 76 (2d Cir. 2017).................................................................22

*Sweeters v. Hodges*,
    256 A.D.2d 185 (1st Dep't 1998) .........................................................................16

*U.S. Bank Nat'l Assoc. v. Lightstone Holdings LLC*,
    66 Misc. 3d 1232(A), (Sup. Ct. N.Y. Cty. Mar. 10, 2020),
    *aff'd* 6 A.D. 3d 445 (1st Dep't 2021)...................................................................16

**Statutes**

11 U.S.C. § 101 ......................................................................................................13

11 U.S.C. § 543 ..................................................................................................13

11 U.S.C. §§ 701-02 .........................................................................................10

11 U.S.C. § 1104 ...............................................................................................10

49 U.S.C. § 24311(b) ....................................................................................6, 17

N.Y.U.C.C. § 9-615 ..........................................................................................16

**Other Authorities**

Fed. R. Civ. P. 9(b) ...........................................................................................21

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 8

Defendant Ben Ashkenazy respectfully submits this memorandum of law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint ("AC"), filed by Plaintiff Kookmin Bank Co., Ltd. in its capacity as Trustee of KTB CRE Debt Fund No. 8, a Korean Investment Trust, by its agent in Korea DAOL Fund Management Co. and by its Agent in the United States, Rexmark Holdings LLC d/b/a Rexmark ("Plaintiff").[1]

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint cures none of the fatal deficiencies in its original Complaint and is likewise subject to dismissal as a matter of law. Plaintiff alleges, once again, that it is entitled to a judgment in excess of $560,000,000 against Mr. Ashkenazy under so-called "bad boy" guaranties for two commercial real estate loans that are triggered only in the event that the borrowers or their affiliates engage in specifically enumerated acts. Plaintiff's Amended Complaint—filed in response to Ashkenazy's motion to dismiss the original complaint—adds no new facts to cure the deficiencies in the original complaint, instead adding legal conclusions which cannot be credited on this motion. And, in response to arguments that Plaintiff did not adequately differentiate damages under each of the relevant Guaranties (defined below) here—which Plaintiff apparently concedes by its amendment on this very point—the claims nevertheless fail because Plaintiff's amendment did nothing more than copy and paste allegations related to one Loan into a separately labeled claim. The Amended Complaint should therefore be dismissed as a matter of law.

\*    \*    \*

---

[1]   Capitalized terms used but not defined herein have the meanings ascribed to them in the AC. All emphasis added unless otherwise stated.

The principal factual allegations underlying this case are unchanged. Plaintiff complains that Ashkenazy's efforts to contest the effectiveness of an alleged foreclosure conducted by Plaintiff in relation to a mezzanine loan constitute bad acts that make Ashkenazy personally liable for all of the debt under both the Mezz Loan and the Mortgage Loan, as well as for damages allegedly caused by various other bad acts. However, even after Plaintiff's amendment, these claims still fail on multiple grounds under the unambiguous terms of the Loan Agreements and the Guaranties.

*First*, the first and second causes of action allege that Ashkenazy triggered the "Springing Recourse Event" provisions of the Loan Agreements and is liable for all of the debt due under both Loans, on the ground that Ashkenazy's conduct was tantamount to consenting to, acquiescing in, or joining in "an application for the appointment of a custodian" of Union Station. AC ¶ 57. A plain reading of the Loan Agreements demonstrates, however, that none of the alleged conduct triggered the Springing Recourse provisions because none of Ashkenazy, the Borrowers, or the property manager, JLL, is a "custodian." The plain language of the agreements demonstrates that "custodian," as used in the Loan Agreements, refers to a person who takes control of Union Station in a bankruptcy or similar debtor-creditor proceeding. Indeed, this meaning is clear from the context in which "custodian" is used in the springing recourse provisions, in conjunction with other bankruptcy-related terms (*e.g.*, "the appointment of a custodian, receiver, trustee, or examiner") and alongside references to the Bankruptcy Code and the filing of petitions under Bankruptcy Law. *See* Loan Agreements § 11.22.[2] Corroborating this interpretation, the Loan Agreements use the

---

[2]     The Mortgage Loan Agreement is attached as Exhibit 1 to the Declaration of David E. Ross ("Ross Decl.") submitted herewith. The Mezz Loan Agreement is attached as Exhibit 2 to the Ross Decl. As in the AC, Ashkenazy refers to the Mortgage Loan Agreement and the Mezz Loan Agreement together as the Loan Agreements.

term "custodian" in only one other place—the definition of a "Bankruptcy Action." No bankruptcy petition has been filed related to either of the Loans, and no application for appointment of any receiver or similar "custodian" has been made. Thus, no Springing Recourse Event has occurred and the first and second causes of action must be dismissed.

*Second*, both the second and fourth causes of action, asserting damages under the Mezz Loan Guaranty, must be dismissed because the Amended Complaint alleges that the Mezz Loan has been paid in full. Plaintiff alleges that it purchased the USI membership interests for $140,553,334.53 at a foreclosure sale, and further alleges that the amount of the Mezz Loan is approximately $140 million. *See* AC ¶¶ 27, 116. The transcript of the foreclosure sale, filed by Plaintiff in this Court in a related proceeding, and which this Court may consider on this motion, confirms that Plaintiff bid the full amount outstanding on the Mezz Loan at the foreclosure sale. Because, as alleged, the Mezz Loan debt was fully satisfied, Plaintiff is not entitled to seek additional recourse from Ashkenazy under the Mezz Loan.

*Third*, Plaintiff's third cause of action, which seeks damages under the Mortgage Loan Guaranty for specified "Borrower's Recourse Liabilities," must be dismissed for failure to allege any cognizable damages. Although the Amended Complaint attempts to cure deficiencies identified by Ashkenazy in his original motion to dismiss (namely, that damages with respect to the Mortgage Loan were conclusorily pleaded and not adequately distinguished from damages with respect to the Mezz Loan), the Amended Complaint simply applies a new label and copies its previous claim essentially *verbatim*. This did not cure the deficiency. Plaintiff does not plead how it was damaged by a Borrower's Recourse Event under the Mortgage Loan. Indeed, the recourse events alleged in the Amended Complaint all refer to Ashkenazy's alleged efforts to dispute the effectiveness of the exercise of rights by the Lender under **the Mezz Loan**. Because Plaintiff does

not allege that it has sought to exercise rights under the Mortgage Loan, the recourse events alleged could not have damaged Plaintiff under the Mortgage Loan. And, even if Plaintiff could have linked these recourse events to the Mortgage Loan in some way (it has not), Plaintiff still could not allege damages since, following the condemnation of Union Station by Amtrak in April 2022, the collateral for the Mortgage Loan became the property of Amtrak, the holder of the Mortgage Loan had no further interest in Union Station, and Ashkenazy's conduct could have no economic impact on Plaintiff. Thus, Plaintiff's third cause of action also must be dismissed.

*Finally*, the third and fourth causes of action, which both allege liability for Borrower's Recourse Events, fail on numerous other grounds. For example, to the extent the claim is based on the so-called "Misrepresentation Provision," it fails for failure to plead the elements of fraud or even negligent misrepresentation, in particular a false misstatement of fact or that Plaintiff relied on the alleged misstatements. Likewise, many of the supposed "misrepresentations" are not actionable because they were made in court proceedings. To the extent the claim is based on the so-called "Misconduct Provision," the claim also fails because the Plaintiff does not adequately plead how Ashkenazy or any other person was "grossly negligent" or "willfully" ignorant of facts about which they should have known.

Accordingly, for the reasons detailed herein, Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice.

## **BACKGROUND**

## I.      **Events Giving Rise To This Action**

This action concerns separate guaranties (respectively, the "Mortgage Loan Guaranty" and the "Mezz Loan Guaranty," and collectively the "Guaranties") made by Ashkenazy of two loans

made in 2018 in connection with the ground lease of Washington Union Station.[3]  The Mortgage Loan Guaranty was made in connection with the Mortgage Loan in the original principal amount of $330 million made to USI, which held the leasehold interest in Union Station.  Plaintiff alleges that it acquired the Mortgage Loan in January 2022.  The Mortgage Loan was documented by, among other writings, a Mortgage Loan Agreement and secured by a mortgage on Union Station. AC ¶¶ 9-10, 38.[4]  The Mezz Loan Guaranty was made in connection with the Mezz Loan in the original principal amount of $100 million, to USSM (together with USI, the "Borrowers"), which held 100% of the ownership interests in USI.  Plaintiff was the original holder of the Mezz Loan. The Mezz Loan was documented by the Mezz Loan Agreement (together with the Mortgage Loan Agreement, the "Loan Agreements"), among other documents, and secured by a pledge of USSM's ownership interest in USI.  AC ¶¶ 11, 38.[5]

The Amended Complaint alleges that each of the Borrowers defaulted under its respective Loan in May 2020, AC ¶ 13, and that, as a result of the defaults, the then-existing lenders noticed foreclosure sales.  *Id.* ¶¶ 17, 18.  Thereafter, Plaintiff, who already held the Mezz Loan, purchased the Mortgage Loan in January 2022 and cancelled both pending foreclosure sales.  *Id.* ¶ 20.

On April 14, 2022, Amtrak filed a complaint and declaration of taking of USI's leasehold interest in Union Station, purportedly pursuant to a statutory grant of eminent domain authority. *See National Railroad Passenger Administration (Amtrak) v. Sublease Interest Obtained Pursuant to an Assignment and Assumption of Leasehold Interest Made as of January 25, 2007*, Case No. 22-cv-1043 (APM) (D.D.C.) (the "Condemnation Action").  AC ¶ 7.  The legal effect of Amtrak's

---

[3]     While Ashkenazy contests many of the facts alleged in the AC, the well-pleaded facts contained therein are accepted for the purposes of this motion.

[4]     A copy of the Mortgage Loan Guaranty is attached as Exhibit 3 to the Ross Decl.

[5]     A copy of the Mezz Loan Guaranty is attached as Exhibit 4 to the Ross Decl.

action was to convey title of the leasehold interest in Union Station to Amtrak free and clear of the Mortgage Lender's interest in the mortgage on Union Station. *See* 49 U.S.C. § 24311(b)(2). On June 14, 2022, after the Condemnation Action was filed, the Mezz Loan Lender conducted a foreclosure sale of the Mezz Loan collateral at which the Mezz Loan Lender purchased the Mezz Loan collateral for the full amount of the Mezz Loan debt. AC ¶ 27; *see* Foreclosure Sale Transcript at 15:14-21, 18:19-24.[6]

The Amended Complaint alleges that despite the foreclosure and other steps taken by Plaintiff to enforce the Mezz Loan, "Ashkenazy has wrongfully arrogated to himself the control and management rights of Union Station that rightfully belong to Lender." AC ¶ 46. Based on these allegations, the Amended Complaint alleges four "causes of action." The first and second causes of action—which, as mentioned, are nearly identical—are brought by Plaintiff under the Mortgage Guaranty and Mezz Guaranty respectively, alleging the occurrence of a Springing Recourse Event under the Custodian Provision of the Loan Agreements. The third cause of action alleges the occurrence of various Borrower's Recourse Liabilities events under the Mortgage

---

[6]     A copy of Foreclosure Sale Transcript is attached as Exhibit 5 to the Ross Decl. The Court may consider the transcript of the foreclosure proceeding, which was submitted by Plaintiff to this Court in another related action (See, Ex, J to ECF No. 7 in Case No. 1:22-cv-06649-GHW) and is implicitly incorporated into the Complaint by reference. *See, e.g.*, *Fierro v. City of New York*, 2022 WL 428264, at *12 (S.D.N.Y. Feb. 10, 2022) ("When considering a motion to dismiss, courts may 'consider extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice.'" (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021))). And, even if not incorporated, Plaintiff's references to its actions at the foreclosure sale and its reliance on the effect of the foreclosure as a legal basis for its claims make the transcript (which was prepared by Plaintiff or its agents and the authenticity of which is not in dispute) integral to the complaint. *Cf. Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (a document "integral" to a complaint is generally a "legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").

Guaranty, and the fourth causes of action, likewise, makes nearly identical allegations under the Mezzanine Guaranty. For the reasons discussed below, none of the conduct alleged in the Amended Complaint gives rise to a recourse claim under the Guaranties.

## II. The Loan Documents

The terms of the Loan Agreements provide that the Loans are non-recourse to the Borrowers unless an event occurs which triggers one of the enumerated "Recourse Obligations." The Guaranties, in turn, guaranty the payment of the Recourse Obligations of the respective Loans. Accordingly, Plaintiff can only seek a money judgment against Ashkenazy as Guarantor if a recourse event has occurred under one of the Loans. The Loan Agreements contain two types of recourse events: a "Springing Recourse Event" and a "Borrower's Recourse Liabilities" event. If a Springing Recourse Event occurs, Plaintiff may potentially assert a claim for the full amount due under the respective Loan. If a Borrower's Recourse Liabilities event occurs, the lender may potentially assert a claim for its actual damages resulting from that event. AC ¶¶ 39-40; Mortgage Loan Agreement §11.22; Mezz Loan Agreement §11.22.

Section 11.22 of each Loan Agreement lists the eight circumstances that can constitute a Springing Recourse Event. Here, the Amended Complaint alleges only a breach of clause (4) on the ground that the Borrower consented to the appointment of a "custodian" for Union Station (the "Custodian Provision"). AC ¶¶ 41, 46-74, 92-104, 106-115. Specifically, the Amended Complaint asserts that Ashkenazy's allegedly improper exercise of control of Union Station following the purported exercise by the Mezz Loan Lender of its rights under the Mezz Loan Documents, triggered the Custodian Provision. Separately, the Amended Complaint also alleges that the provision was triggered by Ashkenazy's consent in the Condemnation Action to Amtrak's request—over Plaintiff's objection—to the maintenance of the status quo and retention of the

existing "property manager" at Union Station, JLL, after Plaintiff attempted to terminate JLL's contract and to appoint another party in its stead. AC ¶¶ 49-50, 60.

With regard to the Borrower's Recourse Liabilities, the Amended Complaint asserts claims under two provisions of the Borrower's Recourse Liabilities section of the Loan Agreements:

- "intentional misrepresentation in writing by Borrower, Guarantor or any Affiliate . . . in connection with the Loan" (the "Misrepresentation Provision"); and

- "the gross negligence or willful misconduct by, or at the direction of, Borrower, Guarantor or any Affiliate. . . in connection with the Loan" (the "Misconduct Provision").

AC ¶ 42 (*quoting* Loan Agreements §11.22).

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). Where a plaintiff has failed to "nudge[]" a claim "across the line from conceivable to plausible," a district court must dismiss the complaint. *Twombly*, 550 U.S. at 570. While the Court must accept as true well-pleaded factual allegations in a complaint and "draw[ ] all inferences in the plaintiff's favor," *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006) (internal quotations omitted), it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Likewise, the Court does not accept implausible allegations and inferences where "judicial experience and common sense" provide equally or more plausible explanations. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

Under New York law, "[t]he terms of [a] guaranty . . . are to be strictly construed in favor of a private guarantor." *665-75 Eleventh Ave. Realty Corp. v. Schlanger*, 265 A.D.2d 270, 271

(1st Dep't 1999). Further, "a guarantor should not be found liable beyond the express terms of the guaranty." *Chicago Title Ins. Co. v. Brookwood Title Agency, LLC*, 179 A.D.3d 887, 888 (2d Dep't 2020).[7]

## I. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF THE LOAN GUARANTIES' SPRINGING RECOURSE PROVISIONS

The Amended Complaint alleges that the Springing Recourse provisions of both Loan Agreements were triggered because Borrowers and Ashkenazy, allegedly through their agent, JLL, continued to manage Union Station following Amtrak's condemnation and the exercise of rights by the Mezz Loan Lender. AC ¶¶ 47, 60, 73-74. This conduct, Plaintiff alleges, was a "bad boy" act that triggered the Custodian Provision because it was tantamount to Ashkenazy consenting to or acquiescing or joining in "an application for the appointment of a custodian . . . other than in connection with a request or action commenced by Lender or its affiliate." AC ¶ 57 (internal quotes omitted, omission in original). A plain reading of the Loan Agreements demonstrates, however, that none of the alleged conduct can be construed as triggering the Custodian Provision. Accordingly, the first and second causes of action must be dismissed.

The term "custodian" is not defined in the Loan Agreements, but the plain language of the contracts demonstrates that "custodian" here means a person who takes control of Union Station in a bankruptcy or similar proceeding. Indeed, the provision of the Loan Agreements including the "Custodian Provision," Section 11.22(B)(4), refers to "the appointment of a custodian, receiver, trustee, or examiner." These are all terms that are commonly used in bankruptcy or other similar proceedings such as a foreclosure to refer to someone who is appointed by a court or otherwise installed to protect creditors' interests, and the word "custodian" in that list, if not

---

[7] The Loan Agreements and Guaranties are governed by New York law. *See* Loan Agreements § 11.3; Guaranties § 6.3.

unambiguous, should not be interpreted any differently.[8]  *Parrella v. Orange Rabbit, Inc.*, 2021

WL 4462809, at *12 (S.D.N.Y. Sept. 29, 2021) ("'Under the traditional canon of both statutory

and contract construction, *noscitur a sociis*, a word is known by the company it keeps.  According

to this principle, the meaning of an unclear word or phrase should be determined by the words

immediately surrounding it.'"  (quoting *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549

F. Supp. 2d 249, 273 (E.D.N.Y. 2008))).

        In addition, as shown in the table below, subsections (1), (2), (3), and (5) of Section

11.22(B)—those immediately preceding and following the "Custodian Provision"—all relate to a

bankruptcy or similar filing concerning the "Borrower."   In this context, a plain reading of

Subsection (4) is that it refers to similar types of proceedings in which a person is appointed to

exercise control over a debtor's property for the benefit of creditors.  As also shown in the table

below, this understanding of the term "custodian" is confirmed by the Loan Agreements' definition

of a "Bankruptcy Action," which also uses the term "custodian."[9]  *Cf. Iroquois Master Fund, Ltd.*

*v. Quantum Fuel Sys. Techs. Worldwide, Inc.*, 2013 WL 4931649, at *2 (S.D.N.Y. Sept. 12, 2013)

("Generally, a word used by the parties in one sense will be given the same meaning throughout

---

[8]        In particular, the Bankruptcy Code provides for the appointment of a "trustee" or
"examiner."  *See* 11 U.S.C. §§ 701-702 (providing for the appointment of a trustee in a chapter 7
case); 11 U.S.C. § 1104 (providing for the appointment of a trustee or examiner in a chapter 11
case).  Receivers are routinely appointed to manage mortgaged property in foreclosure actions.
*See e.g.* NY Real Property Actions & Proceedings § 1325 (providing for the appointment of a
receiver in a mortgage foreclosure action).

[9]        "Custodian" appears two additional times in the Loan Agreements.  Once in the
definition of "Lender Indemnitees" to describe persons who may have interests in the loans, and
a second time in relation to Borrowers' covenants not to take any "Material Action" except under
certain circumstances where "material action" is, in essence, defined as filing an insolvency
proceeding or seeking or consenting to "the appointment of a receiver, liquidator, assignee,
trustee, sequestrator, **custodian**, or any similar official of or for Borrower . . . to make any
assignments for the benefit of creditors of Borrower."  Mortgage Loan Agreement §§ 1.1,
3.1.24(s); Mezz Loan Agreement §§ 1.1, 3.1.24(s).

the contract in the absence of countervailing reasons." (quoting 11 Williston on Contracts § 32:6 (4th ed.))).

| Springing Recourse[10] | Bankruptcy Action[11] |
|---|---|
| (B) the Debt shall be fully recourse to Borrower in the event that any of the following occurs (each, a "**Springing Recourse Event**"): | "**Bankruptcy Action**" shall mean, with respect to any Person, |
| (1) Borrower files a **voluntary petition** under the Bankruptcy Law; | (i) such Person filing a **voluntary petition** under the Bankruptcy Law; |
| (2) an Affiliate, officer, director, or representative which Controls Borrower files, or joins in the filing of, an **involuntary petition** against Borrower under the Bankruptcy Law other than an involuntary petition filed by or at the direction of Lender, or solicits or causes to be solicited petitioning creditors for any involuntary petition against Borrower from any Person; | (ii) the filing of an **involuntary petition** against such Person under the Bankruptcy Law, which involuntary petition is not discharged, stayed or dismissed within sixty (60) days; |
| (3) Borrower files an **answer consenting to or otherwise acquiescing in or joining in any involuntary petition** filed against it by any other Person under the Bankruptcy Law other than Lender or any affiliate of Lender, or solicits or causes to be solicited petitioning creditors for any involuntary petition against Borrower from any Person; | (iii) such Person filing an **answer consenting to or otherwise acquiescing in or joining in any involuntary petition** filed against it, by any other Person under the Bankruptcy Law, or soliciting or causing to be solicited petitioning creditors for an involuntary petition from any Person; |
| (4) any Affiliate, officer, director, or representative which Controls Borrower **consents to or acquiesces in or joins in an application for the appointment of a custodian, receiver, trustee, or examiner** | (iv) such Person **consenting to or acquiescing in or joining in an application for the appointment of a custodian,** |

---

[10]     Mortgage Loan Agreement § 11.22. Section 11.22 of the Mezz Loan Agreement contains nearly identical language.

[11]     Mortgage Loan Agreement § 1.1. The definition of "Bankruptcy Action" in the Mezz Loan Agreement is nearly identical.

| for Borrower or any portion of the Property other than in connection with a request or action commenced by Lender or its affiliate; | **receiver, trustee, or examiner** for such Person or any portion of the Property; or |
|---|---|
| (5) Borrower **makes an assignment for the benefit of creditors, or admits, in writing or in any action or proceeding, its insolvency or inability to pay its debts as they become due** . . . . | (v) such Person **making an assignment for the benefit of creditors, or admitting, in writing or in any legal proceeding, its insolvency or inability to pay its debts as they become due**. |

Because the provisions are substantially identical, it is clear that the Springing Recourse provision tracked the terms in the definition of Bankruptcy Action, further evidencing that subsection (4) relates to a bankruptcy proceeding or another type of creditor-debtor proceeding such as a mortgage foreclosure. *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 456 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016) (noting that courts should not "read[] two parts of the same contract, that contain the same terms, in such a way that they would have two entirely different meanings" (citing *Md. Cas. Co. v. W.R. Grace & Co.*, 128 F.3d 794, 799 (2d Cir. 1997))).

Based on where the term "custodian" appears in Section 11.22 and elsewhere in the contracts and the surrounding context, it is clear that "custodian" has the same meaning as it has in the Bankruptcy Code, which states:

(11) The term "custodian" means--

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;

> (B) assignee under a general assignment for the benefit of the debtor's creditors; or

> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

11 U.S.C. § 101.

By this definition, neither Borrowers nor JLL could be considered a "custodian" of Union Station. Rather, it contemplates that a custodian is someone other than a debtor or its agent who administers property for the benefit of the debtor's creditors. This is also consistent with the one substantive provision of the Bankruptcy Code in which the term "custodian" is used, Section 543. *See* 11 U.S.C. § 543. Generally, Section 543 requires a "custodian" to deliver the debtor's property to a trustee and file an accounting of the debtor's property. Courts interpreting Section 543 have found, however, that a debtor itself is not a "custodian." *See, e.g.*, *DePaola v. Hollingsworth (In re Transp. Mgmt., Inc.)*, 278 B.R. 226, 235 (Bankr. M.D. Ala. 2002) (shareholders and former employees of debtor were not "custodians" because "they were not appointed trustee or receiver in any case; they were not assignees under a general assignment for the benefit of [debtor's] creditors; nor were they appointed to enforce a lien against [debtor] or to administer the property of [debtor] for the benefit of creditors"). Similarly, a person appointed to exercise control of a debtor's property outside of a debtor-creditor context also is not a "custodian." *See, e.g.*, *In re Kennise Diversified Corp.*, 34 B.R. 237, 244 (Bankr. S.D.N.Y. 1983) (administrator appointed to correct serious housing code violations "is not a custodian as that term is defined for the reason that [the administrator's] responsibilities to creditors are merely incidental to his obligation to act in the landlord's stead to correct the conditions inimical to public health and safety alleged in the petition"). This is consistent with the apparent purpose of Section 11.22(i)-(v) to discourage the Borrowers from entering bankruptcy to frustrate Lender's ability to collect the debt or foreclose.

By contrast, the continued retention of JLL as the property manager during the pendency of the condemnation proceeding, which is not a creditor proceeding, does no such thing.[12]

Based on the foregoing, Plaintiff does not (and cannot validly) allege that Borrowers or JLL are "custodians." Further, the Amended Complaint does not (and cannot validly) allege that Ashkenazy—or anyone else for that matter—"consent[ed] to or acquiesce[d] in or join[ed] in an application for the appointment of a custodian . . . for Borrower or any portion of the Property." AC ¶ 41. Indeed, the Amended Complaint fails to allege that anyone has filed an action in bankruptcy, insolvency, foreclosure, or another similar proceeding in relation to Borrowers or Union Station, or made such an application in any other context, let alone that Ashkenazy joined in such an application, or consented to the filing of such an application, because no such application has ever been made.[13]

Accordingly, the Amended Complaint fails to allege that a Springing Recourse Event occurred, and the First and Second Causes of Action should therefore be dismissed.

## II. THE AMENDED COMPLAINT FAILS AS TO THE MEZZ LOAN BECAUSE THE MEZZ LOAN HAS BEEN SATISFIED

The second and fourth causes of action must be dismissed as they relate to the Mezz Loan because that debt has been satisfied. The Amended Complaint alleges that Plaintiff purchased the collateral securing the Mezz Loan at a foreclosure sale. AC ¶ 27. While Borrowers have disputed

---

[12]     Additionally, the Loan Agreements define JLL as the "Manager" of Union Station and Article VII of both Loan Agreements provides the parties' rights and obligations with respect to management of Union Station. If the parties contemplated that certain conduct relating to management constituted "bad boy" acts, they would have expressly provided for the same in Section 11.22. The absence in Section 11.22 of any provision relating to management or the "Manager" triggering the Springing Recourse obligations demonstrates that the conduct alleged was not a "bad boy" act.

[13]     In addition, because, the Amended Complaint alleges that JLL was already managing Union Station when Amtrak made its motion to maintain the status quo, AC ¶¶ 50-52 Ashkenazy did not consent to an "application for the **appointment** of a custodian."

the validity and effect of that foreclosure sale, Plaintiff's claim is predicated on the effectiveness of the foreclosure and, assuming the truth of Plaintiff's allegations as the Court must on a motion to dismiss, the Mezz Loan debt was extinguished by the foreclosure sale. Therefore, as explained below, the Mezz Loan has been satisfied and any further recovery from Ashkenazy would result in an impermissible windfall to Plaintiff.

"Debt" is defined in the Mezz Loan Agreement to mean "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon, any applicable Prepayment Fee and all other sums due to Lender in respect of the Loan under the Note, this Agreement or any other Loan Document." Mezz Loan Agreement § 1.1. The Amended Complaint alleges that Lender conducted a foreclosure sale of the Mezz Loan on June 14, 2022, and that "at the foreclosure sale, Lender was the highest bidder, purchasing USSM's membership interests in USI for $140,535,334.53." AC ¶¶ 27-37. This was equivalent to the entire amount of the Mezz Loan Debt, thus satisfying the Mezz Loan. *See* AC ¶ 37 (alleging that Plaintiff is owed more than $420 million in connection with the Mortgage Loan, and $560 million in connection with both Loans). Indeed, at the foreclosure sale, Plaintiff's counsel, who was administering the sale, admitted as much: "[T]he total amount of indebtedness due and owing to [Plaintiff] . . . has been calculated by [Plaintiff] to total $140,535,334.53 as of the date of this auction." Foreclosure Sale Transcript 15:14-21; *see also id.* 18:19-24 ("[T]he winning bid . . . is a credit bit [sic] of $140,535,334.53 that was made . . . on behalf of [Plaintiff].").

The function of the Guaranty to the Mezz Loan was to secure payment of the Borrower's obligations under the Mezz Loan should a Recourse Event occur. *See* Mezz Loan Guaranty Recitals ("**WHEREAS**, Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment and performance to Lender of the

Guaranteed obligations . . . ."). Additionally, the Recourse Liabilities only permit the Mezz Loan Lender to recover up to the amount of the Debt. Mezz Loan Agreement § 11.22. Accepting the allegations in the Amended Complaint as true, the Mezz Loan Debt was fully satisfied. Therefore, Plaintiff is not entitled to seek additional recourse from Ashkenazy on account of the Mezz Loan because such would amount to a windfall or double recovery to Plaintiff. *See* N.Y.U.C.C. § 9-615 (stating that the funds tendered at a foreclosure sale must be used to satisfy the outstanding obligation); *U.S. Bank Nat'l Assoc. v. Lightstone Holdings LLC*, 66 Misc. 3d 1232(A), at *9 (Sup. Ct. N.Y. Cty. Mar. 10, 2020) (holding that lender was not "entitled to be made whole by mortgage foreclosure sales and related recoveries on the underlying debt and nevertheless reap a windfall and potential double recovery under a guaranty") (citing *New York v. Clarose Cinema Corp.*, 256 A.D.2d 63, 71 (1st Dep't 1998)), *aff'd*, 196 A.D. 3d 445 (1st Dep't 2021); *see also Sweeters v. Hodges*, 256 A.D.2d 185, 185 (1st Dep't 1998) ("A guarantor is liable to the creditor only for the amount of the principal obligor's default.").[14] Accordingly, as the second and fourth causes of action allege damages under the Mezz Loan which was entirely satisfied, they both must be dismissed because Plaintiff is not entitled to any damages from that guarantee.

---

[14]    To the extent the Amended Complaint alleges Recourse Events that occurred after the June 14, 2022 foreclosure sale, those events could not give rise to any damages under the Mezz Loan because, as alleged, the Mezz Loan was satisfied and therefore extinguished. *See S. Shore Fed. Sav. & Loan Ass'n v. Mikarp Realty Corp.*, 100 Misc. 2d 196, 197 (N.Y. Sup. Ct. Suff. Cnt'y Feb. 24, 1978), *aff'd*, 65 A.D.2d 620 (2d Dep't 1978) (mortgagee satisfied the debt when it bid the full amount owing at the foreclosure sale and thereby extinguished its lien on other property of the borrower). Moreover, because at the foreclosure sale the Mezz Loan Lender sold its collateral consisting of its membership interest in USI, it could not incur any damages after that date from the alleged interference with the management of Union Station. Ashkenazy did not guaranty any hypothetical losses incurred by the buyer of the USI interests at the foreclosure sale and, moreover, the buyer is not a party to this action or the Guaranties at issue.

**III.** **THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
BREACH OF THE RECOURSE OBLIGATIONS**

    **A.** **The Amended Complaint Does Not—And Could Not Plausibly—Allege
Damages Relating To The Mortgage Loan.**

The third cause of action in the Amended Complaint, alleging Borrower Recourse

Liability under the Mortgage Loan, must be dismissed as Plaintiff cannot assert any viable

damages with respect to the Mortgage Loan.[15]  Virtually all of the "recourse events" alleged

under the third cause of action arose following the filing by Amtrak of the Condemnation Action

on April 14, 2022.  AC ¶ 7.  The effect of that filing was to vest title to the leasehold interest in

Amtrak free and clear of the Mortgage held by the Mortgage Lender.  *See* 49 U.S.C. § 24311(b).

As a result, on and after April 14, 2022, the Mortgage Lender held no interest in Union Station.

Accordingly, all of the later actions by Borrowers alleged in the Amended Complaint with

respect to the control and management of Union Station could not have caused any damage to

the Mortgage Lender.[16]

A detailed review of the recourse allegations confirms that this is beyond dispute.[17]  The

Amended Complaint alleges two categories of recourse claims: those based on

"Misrepresentation," and those based on "Misconduct."  Paragraph 80 of the Amended

---

[15]    For the reasons stated in Point II, *supra*, the Mezz Loan Lender has been fully paid and
has no damages.

[16]    After the taking, the Mortgage Lender's recourse was to the compensation Amtrak was
required to pay for the taking.  The amount of the compensation is to be determined based on the
value of the leasehold interest in Union Station on the date of the taking and subsequent events
do not have any effect on the amount of compensation.  *Knick v. Twp. of Scott, Pennsylvania*,
139 S. Ct. 2162, 2170 (2019) ("[A] property owner found to have a valid takings claim is entitled
to compensation as if it had been 'paid contemporaneously with the taking' -- that is, the
compensation must generally consist of the total value of the property when taken, plus interest
from that time." (citing *Jacobs v. United States*, 290 U.S. 13, 17 (1933)).

[17]    The allegations are first stated in paragraphs 75 through 88 and are then summarized in
paragraphs 117 through 138 without adding any additional detail.

Complaint alleges that "Ashkenazy" triggered the Misrepresentation Provision of the Guaranties by various statements made between May 19, 2022 and September 19, 2022. However, all of these alleged misrepresentations concern the validity of the exercise of rights of the Mezz Loan Lender under the Mezz Loan documents, not the Mortgage Lender:[18]

a. Paragraph 80(a) alleges that on May 19, 2022, Ashkenazy directed his counsel in the condemnation action to file an answer on behalf of USI without consulting with Plaintiff and despite that "Lender had already exercised its rights under the Loan Documents to replace Ashkenazy as manager of USI." This exercise of rights was carried out by the Mezz Loan Lender under the Mezz Loan Pledge Agreement. *See* AC ¶ 50 (alleging that "Lender exercised its rights under the Pledge Agreement"); ¶ 11 (defining "Pledge Agreement" as a document executed to secure the rights of the Mezz Loan Lender); *see also* Ross Dec, Exhibit 6 (May 13 Letters and attachments purporting to replace Ashkenazy as manager of USI).[19] The Mortgage Loan Lender played no role in the alleged exercise of rights, nor could it since it no longer had any interest in Union Station.

b. Paragraph 80(b) alleges that on May 20, 2022, Ashkenazy's counsel disputed the validity of the answer submitted at the direction of the manager of USI appointed by the Mezz Loan Lender. This allegation also does not concern the Mortgage Lender.

c. Paragraph 80(c) similarly alleges that on May 20, 2022, Ashkenazy disputed the replacement of Ashkenazy as manager of USI.

---

[18]     Because all of the alleged misrepresentations concern legal disputes that are the subject of legal proceedings, the alleged misrepresentations do not state a claim for that reason. *See* Point III B below.

[19]     The May 13 letters may be considered by the Court on this Motion because they are incorporated by reference into the Amended Complaint. *See supra* n.4.

d. Paragraph 80(d) alleges that a May 20, 2022 statement by Ashkenazy's counsel to Amtrak's counsel misrepresented that Ashkenazy could speak on behalf of USI.

e. Paragraph 80(e) is based on a motion filed on June 3, 2022 by Ashkenazy's counsel in the condemnation proceeding that sought to strike the answer filed in the proceeding on USI's behalf by the manager appointed by the Mezz Loan Lender.[20]

f. Paragraph 80(f) is based on a declaration submitted on June 3, 2022 in support of the motion to strike that provided support for the statements quoted in paragraph 80(e).

g. Paragraph 80(g) is based on statements made by Ashkenazy's counsel on June 23 and 24, 2022, disputing the validity of the foreclosure sale conducted by the Mezz Loan Lender on June 14, 2022.

h. Paragraph 80(h) alleges Ashkenazy informed Amtrak, USRC, and other government agencies that Lender lacked authority to settle the eminent-domain proceeding following the alleged exercise of Plaintiff's rights under the Mezz Loan.

i. Paragraph 80(i) alleges that on July 1, 2022, Ashkenazy's counsel improperly challenged the Mezz Loan Lender's "rightful control" of the management of USI "given its ownership of USI post foreclosure."

Likewise, the allegations concerning the Misconduct Provision all concern the purported exercise of rights by the Mezz Loan Lender following the condemnation of Union Station by Amtrak and could not concern the Mortgage Loan:

---

[20]    Two statements in the motion arguably concern actions taken by the Mortgage Lender prior to the condemnation but there is no suggestion as to how those allegedly false statements were relied upon by the Mortgage Lender or could have injured it.  *See infra* Point III.B.

a. Paragraph 85(a) alleges that Ashkenazy directed JLL not to enter into a new property management agreement with the "Lender" or the manager who the Mezz Loan Lender purportedly appointed.

b. Paragraph 85(b) similarly alleges that Ashkenazy blocked the amendment of the existing property management agreement with JLL that would have created a direct contractual relationship between JLL and USI or "Lender."

c. Paragraph 85(c) alleges that Ashkenazy directed JLL to withhold financial information from "Lender" that "Lender" needed to fund the operation of Union Station following its exercise of rights under the Mezz Loan and foreclosure.

d. Paragraph 85(d) alleges that Ashkenazy directed various third parties to report to Ashkenazy as the manager of USI instead of to "Lender" or its appointee as manager.

e. Paragraph 85(e) alleges that Ashkenazy provided conflicting information to JLL regarding who controls the property management at Union Station.

f. Paragraph 85(f) alleges that Ashkenazy directed its agents including JLL to withhold Union Station related information from "Lender" and its appointed manager.

g. Paragraph 85(g) alleges that Ashkenazy directed USSM's counsel to not respond to Lender's request to consent to judgement regarding ownership and control of USI.

h. Paragraph 85(h) alleges Ashkenazy, the Mortgage Borrowers, and Mezzanine Borrower's purported lies and misrepresentations constitute willful misconduct or gross negligence.

For the foregoing reasons the Amended Complaint does not state a claim by the Mortgage Lender based on the Recourse Liability provisions of the Mortgage Loan, and the third cause of action must be dismissed.

**B.** **The Amended Complaint Fails To Plead That The Recourse Liabilities Provisions Were Triggered**

The Amended Complaint also fails to allege facts to establish that either of the invoked Recourse Liability provisions were triggered, mandating dismissal of both the third and fourth causes of action.

1.   *The Amended Complaint fails to sufficiently allege that the Misrepresentation Provision was triggered because it does not plead the elements of a common law fraud claim.*

Under New York Law, the elements of common law fraud and intentional misrepresentation are the same. *Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, at 539 (E.D.N.Y. 2017).   Accordingly, though Plaintiff alleges Ashkenazy's actions amount to intentional misrepresentation, not fraudulent misrepresentation, in order to sufficiently allege that the Misrepresentation Provision was triggered, Plaintiff is required to plead the elements of common law fraud.[21]   *See Brown v. Lower Brule Community Dev. Enterprise LLC*, 2014 WL 5508645, at *5, 7-8 (S.D.N.Y. Oct. 31, 2014) (dismissing claim based on language similar to the Misrepresentation Provision), *aff'd*, 606 Fed. Appx. 626 (2d Cir. 2015).   "Under New York law, the elements of common law fraud are defendants knowing misrepresentation of a material fact, made with the intent to deceive, plaintiff's reasonable reliance, and damages." *Id.* at *5 (internal quotation marks and citation omitted).   The complaint must also satisfy the pleading standards of Federal Rules of Civil Procedure Rule 9(b). *Id.*   Doing so requires the plaintiff to "(1) specify the

---

[21]      Plaintiff previously claimed that its complaint does not allege fraud, and thus Plaintiff is not required to meet the heightened pleading standard required for fraud; yet, even if Plaintiff only makes allegations for negligent misrepresentation—as opposed to fraudulent or intentional misrepresentation—Plaintiff is *still* required to meet the Rule 9(b) heightened pleading standard and to plead a false statement of face and reliance. *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 508 (S.D.N.Y. 2013) (explaining "[n]egligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard").

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012). The Amended Complaint fails to satisfy these requirements.

*First*, the Amended Complaint fails to allege that Plaintiff made a material misrepresentation of fact. Nearly all of the supposed "misrepresentations," *see* AC ¶ 80, are based upon or flow from Borrowers' interpretation of the Loan Agreements.[22] Regardless of whose interpretation of these contracts is correct—which are issues pending in separate litigation before this Court and the D.C. court—Borrowers' interpretation of these contracts are just that, an interpretation, and are not "facts." *See Carolina Cas. Ins. Co. v. Cap. Trucking, Inc.*, 523 F. Supp. 3d 661, 680 (S.D.N.Y. Mar. 5, 2021) ("It is 'well settled' that 'fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law."), *Singh v. NYCTL 2009-A Tr.*, 2016 WL 3962009, at *7 (S.D.N.Y. July 20, 2016) ("It is 'well settled' that 'fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law.'" (quoting 37 AM. JUR. 2d of Fraud & Deceit § 101 (2014))), *aff'd*, 683 F. App'x 76 (2d Cir. 2017), *Charid Properties, Inc. v. Berger*, 37 A.D.2d 987, 987 (1971) (dismissing complaint where alleged misrepresentations were representations of legal opinion), *aff'd*, 32 N.Y.2d 667 (1973).

In addition, to the extent the Court finds any statement to be sufficiently factual, the Amended Complaint seeks liability for statements to a court or to counsel in relation to a pending court action. *See* AC ¶ 80(a), (b), (d)-(i). These statements are non-actionable under New York's

---

[22]     The few exceptions, AC ¶ 80(e)(i)-(ii), (f)(i)-(iii), relate to Borrowers' claims of Lender misconduct, which cannot reasonably be construed as "fraud or intentional material misrepresentation . . . in connection with the Loan." Mortgage Loan § 11.22(i); Mezz Loan § 11.22(i). These statements were neither "material" nor made "in connection with the Loan."

"broad" litigation privilege.  *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 455–56 (E.D.N.Y. 2013) ("New York has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation.  A statement made in the course of a judicial proceeding is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation." (citations omitted)); *see also Geer v. Gates Chili Cent. Sch. Dist.*, 321 F. Supp. 3d 417, 423 (W.D.N.Y. 2018) ("It has long been established under New York law that statements uttered in the course of a judicial proceeding are absolutely privileged, as long as such statements are material and pertinent to the questions involved in the proceeding.") (internal citations omitted), *aff'd sub nom., Geer v. Emp. Health Referral Sys., Inc.*, 768 F. App'x 55 (2d Cir. 2019).

*Second*, the Amended Complaint fails to plead—and, indeed, makes no attempt at pleading—that any of the statements at issue were made with the intent to deceive.

*Third*, the Amended Complaint does not plead that Plaintiff relied upon the alleged misrepresentations.  To the contrary, not only is there no suggestion that Plaintiff believed that the statements, most of which were directed to the D.C. court or third parties, were true, but also Plaintiff's actions in this case and elsewhere, as alleged in the AC, have demonstrated that it has *not* relied on any of these statements.  For example, the Amended Complaint alleges generally that Borrowers made material misrepresentations by stating in court filings and correspondence that they retained control of USI and management of Union Station.  AC ¶ 80.  Plaintiff did not rely on these statements.  Instead it "terminated JLL" and "appoint[ed a] new independent manager" of Union Station.  AC ¶¶ 49-50.  Plaintiff also "filed the Declaratory Judgement Action" in response to Borrowers' "continued interference and obstruction." AC ¶ 82.

*Finally*, as set forth above (at Point III.A), Plaintiff has failed to allege any viable damages with respect to the Mortgage Loan. Similarly, as set forth in Point II above, because the Mezz Loan has been paid in full, Plaintiff cannot have incurred any damages with respect to that loan.

For these reasons, the Amended Complaint fails to sufficiently allege that the Misrepresentation Provision was triggered.

> ### 2. The Amended Complaint fails to allege that Borrowers directed or acted with gross negligence or willful misconduct.

The Amended Complaint alleges that Ashkenazy triggered the Misconduct Provision generally by (i) directing JLL to not enter into a contractual relationship with Plaintiff or Henrich/Investco and to withhold financial documentation and other information from Plaintiff and Henrich/Investco, (ii) directing third parties, including tenants and vendors, to "report" to Borrowers instead of to Plaintiff or Henrich/Investco, and (iii) providing JLL with "conflicting information, direction, and instructions regarding who controls the property management at Union Station." AC ¶ 85. Plaintiff also asserts that certain actions Ashkenazy took or directed his counsel to take in litigation violated this provision, *see* AC ¶ 85(g)-(i), but these actions clearly cannot be negligent under New York's litigation privilege. The Amended Complaint then alleges in conclusory fashion that these "actions . . . constitute willful misconduct . . . [or,] at the very least, . . . gross negligence." AC ¶ 86.

Under New York law, to sufficiently plead gross negligence, at a minimum, a plaintiff must allege facts that "smack of intentional wrongdoing" or "that evince[ ] a reckless indifference to the rights of others." *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 683 (2012). Plaintiff makes no attempt to do so here. Indeed, Plaintiff's only attempt, consisting of conclusory allegations that Ashkenazy must have known that his actions contradict the Loan Agreements and related documents, *see* AC ¶ 85, are implausible and not actionable, since Ashkenazy was, at the

same time, litigating the merits of those same positions in both the Condemnation Action and in this Court. Just as above (*see infra __*), to the extent Plaintiff asserts that actions Ashkenazy took in connection with litigation constitute "negligence," that assertion fails since the actions are protected by New York's litigation privilege. But not only that—Plaintiff's allegations of negligence and willful misconduct are not plausible because Ashkenazy was not asserting his rights privately or between the parties, but instead sought affirmative relief to validate his rights under the Mezz Loan Agreement and to maintain the status quo (pursuant to which he was acting) in the Condemnation Action. Thus, at a minimum, it is implausible that Ashkenazy knew or should have known that his positions were not meritorious—which he still disputes.

Thus, because Plaintiff has failed to provide details in the Amended Complaint sufficient to establish that any of the recourse events actually occurred or triggered the guaranty obligations, both the third and fourth causes of action fail for this independent reason.

## CONCLUSION

For the foregoing reasons, the Court should grant Ashkenazy's Motion in its entirety.


Dated: November 21, 2022          KASOWITZ BENSON TORRES LLP

By:     */s/ David E. Ross*
     David E. Ross
     David J. Mark
     Daniel J. Koevary
     Andrew W. Breland
     1633 Broadway
     Tel.: (212) 506-1700
     New York, NY 10019
     dross@kasowitz.com
     dmark@kasowitz.com
     dkoevary@kasowitz.com
     abreland@kasowitz.com

     *Attorneys for Defendant Ben Ashkenazy*