UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

KOOKMIN BANK CO., LTD., in its capacity as      :
Trustee of KTB CRE DEBT FUND NO. 8, a
Korean Investment Trust, by its agent in Korea    :
DAOL FUND MANAGEMENT CO. and by its
Agent in United States, REXMARK HOLDINGS   :    Case No. 1:22-cv-05802-GHW
LLC d/b/a REXMARK

                                :

                    Plaintiff,

                                :

  -against-

                                :

BEN ASHKENAZY,

                                :

                    Defendant.

------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

**MORRISON COHEN LLP**
Y. David Scharf
Kristin T. Roy
Latisha V. Thompson
Amber R. Will
909 Third Avenue
New York, New York 10022
(212) 835-8600
dscharf@morrisoncohen.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ....................................................................................... 4

    A.    The Loan Documents and Subject Guaranties ............................................ 4

    B.    USI and USSM Default on the Loans, and Lender Exercises its Rights ..................... 6

    C.    The Court Enjoins USSM's Interference With the USI Equity ................................. 7

    D.    Ashkenazy Triggers Recourse Under the Mortgage and Mezz Guaranties ................. 7

ARGUMENT ........................................................................................................ 9

  I.  THE FORECLOSURE SALE DOES NOT NULLIFY ASHKENAZY'S
    OBLIGATIONS UNDER THE MEZZ GUARANTY ......................................... 9

    A.    Ashkenazy Remains Liable for Recourse Liabilities  Notwithstanding
    the Foreclosure Sale ........................................................................... 9

    B.    The Satisfaction of the Mezz Loan Remains Disputed,  Making
    Dismissal Premature ........................................................................... 12

    C.    Lender Can Seek Judgment Under Mezz Guaranty  Without First
    Resorting to Collateral ........................................................................ 13

  II. LENDER'S ALLEGATIONS SUPPORT THE CLAIMS TO HOLD
    ASHKENAZY LIABLE FOR TRIGGERING RECOURSE LIABILITIES ..................... 15

    A.    Lender's Allegations Support Enforcing Liability Against Ashkenazy
    for Costs and Expenses Incurred in Connection With the Mortgage Loan ................. 15

    B.    Lender Has Sufficiently Pleaded Intentional Misrepresentations ............................. 17

    C.    Lender Has Sufficiently Pleaded Willful Misconduct and Gross Negligence ........... 19

  III.    LENDER STATES A CLAIM FOR BREACH OF THE SPRINGING
    RECOURSE PROVISIONS UNDER BOTH THE MORTGAGE AND
    MEZZ GUARANTIES ........................................................................... 21

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. Best Care Agency, Inc.*,
 961 F. Supp. 2d 427 (E.D.N.Y. 2013) ...................................................................19

*Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*,
 21-70-cv, 2021 WL 6060710 (2d Cir. Dec. 20, 2021)...........................................22

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
 679 F. Supp. 2d 474 (S.D.N.Y. 2010)...................................................................18

*Blue True Hotels Inv. (Canada), Ltd. v. Starwood Hotels &
 Resorts Worldwide, Inc.*,
 369 F.3d 212 (2d Cir. 2004)...............................................................................4, 9

Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.,
 No. 13-cv-7544 (PKC), 2014 WL 5508645, at *2 (S.D.N.Y. Oct. 31, 2014),
 *Aff'd sub nom*, 606 F. App'x 626, 628 (2d Cir. 2015)..........................................18

*CapitalSource Fin. LLC v. Blaichman*,
 No. 09 Civ. 3283(LTS), 2010 WL 764300 (S.D.N.Y. Mar. 5, 2010)....................24

*Carolina Cas. Ins. Co. v. Capital Trucking, Inc.*,
 523 F. Supp. 3d 661 (S.D.N.Y. 2021).....................................................................19

*Charid Props. v. Berger*,
 37 A.D.2d 987 (2d Dep't 1971) .............................................................................19

*Chesapeake Energy Corp. v. The Bank Of New York Mellon Tr. Co., N.A.*,
 773 F.3d 110 (2d Cir. Nov. 25, 2014).....................................................................22

*Chesapeake Energy Corp. v. The Bank of New York Mellon Tr. Co., N.A.*,
 No. 13 Civ. 1582 (PAE), 2015 WL 4191419 (S.D.N.Y. July 10, 2015), *aff'd*,
 837 F.3d 146 (2d Cir. 2016)....................................................................................10

*Citibank, N.A. v. Uri Schwartz & Sons Diamonds Ltd.*,
 97 A.D.3d 444 (1st Dep't 2012) .............................................................................19

*CP III Rincon Towers, Inc. v. Cohen*,
 10-CV-4638 (JMF), 2022 WL 61318 (S.D.N.Y. Jan. 6, 2022) ................................9

*CP III Rincon Towers, Inc. v. Cohen*,
No. 10 Civ. 4638 (DAB), 2011 WL 651434 (S.D.N.Y. Feb. 16, 2011) .....................................9

*GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*,
No. 07 Civ. 10394 (NRB), 2008 WL 3891257 (S.D.N.Y. Aug. 21, 2008) ............................13

*Geer v. Gates Chili Cent. Sch. Dist.*,
321 F. Supp. 3d 417 (W.D.N.Y. 2018), *aff'd sub nom.*, *Geer v. Emp. Health Referral Sys., Inc.*, 768 F. App'x 55 (2d Cir. 2019)................................................................19

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
No. 08 Civ. 6131(DLC), 2010 WL 1141145 (S.D.N.Y. Mar. 24, 2010), *aff'd sub nom.*, *HSH Nordbank AG New York Branch v Street*, 421 F. App'x. 70 (2d Cir. 2011) ........................................................................................................................10

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
309 F. Supp. 3d 100 (S.D.N.Y. 2018)..................................................................................9, 17

*Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Techs. Worldwide, Inc.*,
No. 13 Civ. 3860, 2013 WL 4931649 (S.D.N.Y. Sept. 1, 2013) .........................................23

*KLS Diversified Master Fund, L.P. v. McDevitt*,
507 F. Supp. 3d 508 (S.D.N.Y. 2020), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) ................................................................................................................ *passim*

*KLS Diversified Master Fund, L.P. v. McDevitt*,
532 F. Supp. 3d 126 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) ......................................................................................................................13

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
255 F. Supp. 3d 443 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016).....................24

*Mumin v. Uber Techs., Inc.*,
239 F. Supp. 3d 507 (E.D.N.Y. 2017) ..................................................................................18

*Parrella v. Orange Rabbit, Inc.*,
20-CV-9923 (RA), 2021 WL 4462809 (S.D.N.Y. Sept. 29, 2021), *appeal dismissed*, 21-2740, 2022 WL 1310736 (2d Cir. Feb. 24, 2022)............................................23

*Patton v. Egan*,
No. 12 Civ. 2500 (LGS), 2014 WL 4652489 (S.D.N.Y. Sept. 18, 2014)..............................23

*Portside Growth & Opportunity Fund v. Gigabeam Corp., Inc.*,
557 F. Supp. 2d 427 (S.D.N.Y. 2008)....................................................................................18

*Rapaport v. Strategic Fin. Sols., LLC*,
190 A.D.3d 657 (1st Dep't 2021) ...........................................................................................19

*S. Shore Fed. Sav. & Loan Ass'n v. Mikary Realty Corp.*,
100 Misc. 2d 196 (N.Y. Sup. Ct. Suff. Cnty. 1978), *aff'd*, 65 A.D.2d 620 (2d
Dep't 1978) ........................................................................................................14

*Singh v. NYCTL 2009-A Tr.*,
14 Civ. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016) ...................................19

*Sweeters v. Hodges*,
256 A.D.2d 185 (1st Dep't 1998) ...........................................................................4

*Szulik v. State St. Bank & Tr. Co.*,
935 F. Supp. 2d 240 (D. Mass. 2013) ...................................................................22

*Taylor Precision, Prods., Inc. v. Larimer Grp., Inc.*,
1:15-cv-4428, 2022 WL 336953 (S.D.N.Y. Feb. 4, 2022) ....................................20

*New York ex rel. TZAC, Inc. v. New Israel Fund*,
520 F. Supp. 3d 362 (S.D.N.Y. 2021) (Woods, J.) .......................................4, 7, 13

*U.S. Bank Nat'l Ass'n as Tr. v. Wildstein*,
No. 1:19-cv-1151-LMM, 2020 WL 4730983 (N.D. Ga. Jan. 14, 2020), *aff'd*,
No. 21-12780, 2022 WL 1222275 (11th Cir. Apr. 26, 2022) ................................20

*U.S. Bank Nat'l Ass'n v. Kobernick*,
454 F. App'x 307 (5th Cir. 2011) .........................................................................10

*U.S. Bank Nat'l Ass'n v. Lightstone Holdings LLC*,
66 Misc. 3d 1232(A) (Sup. Ct. N.Y. Cnty. 2020), *aff'd*, 196 A.D.3d 445 (1st
Dep't 2021), *lv to appeal denied sub nom.*, 38 N.Y.3d 913 (2022)...................10, 14

*In re U.S. for an Order Authorizing Roving Interception of Oral Commc'ns v.
United States of America*,
349 F.3d 1132 (9th Cir. 2003) ..............................................................................22

*Vermont Teddy Bear Co, Inc. v. 538 Madison Realty Co.*,
1 N.Y.3d 470 (2004) .............................................................................................11

*W.W.W. Assocs., Inc. v. Giancontieri*,
77 N.Y.2d 157 (1990) ...........................................................................................10

*Wells Fargo Bank, N.A. v. RLJ Lodging Tr.*,
No. 13 C 758, 2016 WL 427487 (N.D. Ill. Feb. 4, 2016).....................................10

*Wells Fargo Tr. Co., Nat'l Ass'n v. Markoff*,
No. C17-1862-JCC, 2019 WL 937699 (W.D. Wash. Feb. 26, 2019).....................20

**Other Authorities**

Black's Law Dictionary ................................................................................................................22, 23

Merriam-Webster Dictionary ...........................................................................................................22

Oxford English Dictionary ...............................................................................................................22

Plaintiff Kookmin Bank Co., Ltd., in its capacity as trustee ("Trustee" or "Kookmin") of KTB CRE Debt Fund No. 8, a Korean Investment Trust ("Trust"), by its agent on behalf of Trust in Korea, Daol Fund Management Co. ("Daol Fund") and by its agent on behalf of Trust in United States, Rexmark Holdings LLC d/b/a Rexmark ("Rexmark," together with Trustee, Trust, and Daol Fund, "Lender"), by and through its undersigned counsel, respectfully submits the following opposition to Defendant Ben Ashkenazy's ("Ashkenazy")[1] Motion to Dismiss the Amended Complaint ("Motion").[2]

## PRELIMINARY STATEMENT

Desperate to evade the consequences of his misconduct, Ashkenazy moves to dismiss Lender's claims on the basis that the detailed allegations fail to state a plausible claim. Ashkenazy, the CEO and Chairman of a sophisticated real-estate investment firm, agreed to recourse guaranties on mortgage and mezzanine loans for a principal amount totaling $430 million. Under separate guaranties, Ashkenazy would become personally liable for the entire debt of each loan if Ashkenazy triggered a Springing Recourse Event, and for incurred costs and expenses if Ashkenazy engaged in certain actions outlined under the Recourse Liabilities. During the course of months of misconduct, Ashkenazy triggered both recourse events under each guaranty. Lender seeks to hold Ashkenazy to his contractual promises to pay in those circumstances. This action brings four claims for breach of the Guaranties seeking recovery of the unpaid debt from the Mortgage Loan and the Mezz Loan, and the associated costs and expenses incurred by Ashkenazy's misrepresentations, willful misconduct, and gross negligence in connection with the

---

[1]    For purposes of this opposition, "Ashkenazy" encompasses those persons or entities controlled or directed by Ashkenazy and those acting as Ashkenazy's agent.
[2]    Capitalized terms not otherwise defined refer to the terms as used in the Amended Complaint, ECF Doc. No. 27 (the "Amended Complaint" or "AC").

Mortgage and Mezz Loans. The Amended Complaint details the factual allegations with sufficient particularity to survive Ashkenazy's ill-fated Motion.

Ashkenazy argues that Lender cannot seek the full debt or the associated costs from misconduct associated with the Mezz Loan because the foreclosure sale satisfied the Mezz Loan entirely, "satisfying" Ashkenazy's liability. However, the effect of the foreclosure sale is not determinative of Ashkenazy's obligations under the Mezz Guaranty. Even if the foreclosure sale paid the Mezz Loan as of that date, Ashkenazy remains liable for the costs and expenses incurred as a result of Ashkenazy's continued challenge to Lender's exercise of rights. This is particularly so because in the pending Declaratory Judgment Action, Ashkenazy continues to challenge the validity of the foreclosure sale, and those costs and expenses continue to accrue as Ashkenazy's responsibility pursuant to the Loan Documents. Despite being asked to consent to judgment in the Declaratory Judgment Action, Ashkenazy has repeatedly refused. Thus, his argument that the foreclosure sale effectively extinguished his liability is incongruous. Regardless, Lender is not required to resort to the collateral before seeking judgment on the Mezz Guaranty. To this end, the recent case *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508 (S.D.N.Y. 2020), explores and rejects the same arguments made by Ashkenazy here.

Ashkenazy next argues that none of the Recourse Liabilities can apply to the Mortgage Loan because the alleged misconduct refers to Lender's exercise of rights under the Mezz Loan. Undermining this position are carefully delineated allegations that apply to either (or both) the Mortgage and Mezz Loans and the explicit language of Section 11.22 that provides liability for any costs or expenses arising from the misconduct done "in connection with the Loan"—both the Mortgage and Mezz Loans. Further, each misrepresentation, intentional act, and grossly negligent act alleged details how it relates to the Mortgage Loan.

Remarkably, after multiple failed attempts, Ashkenazy continues to hide behind the condemnation action pending in the United States District Court for the District of Columbia (the "Condemnation Action"). Ashkenazy takes the remarkable position that the Condemnation Action renders any claim for breach of the Mortgage Loan and related Guaranty void. Ashkenazy still cannot cite to any provision in any of the Loan Documents or any case law to support such an incredible position. The Condemnation Action simply does not give Ashkenazy a free pass to misrepresent facts and engage in wrongful conduct for which he has recourse under the Guaranties.

Despite Ashkenazy's attempt to contort a breach of contract into one for fraud, Lender's claims are based on the former. The heightened pleading standard he seeks to impose is not applicable. Similarly, the litigation privilege does not shield Ashkenazy's misrepresentations. Moreover, the Amended Complaint contains detailed factual allegations regarding Ashkenazy's misconduct that amount to intentional misconduct or, at least, smack of intentional wrongdoing.

The Amended Complaint more than sufficiently pleads breach of the Mortgage and Mezz Guaranties based on Ashkenazy triggering Springing Recourse. As this Court is aware, after the respective borrowers defaulted on both of the loans, Lender exercised certain rights and remedies provided by the Loan Documents, including (i) terminating the property manager for Union Station, JLL; (ii) replacing Ashkenazy as manager of USI, and (iii) hiring a new manager who, in turn, hired a new property-management company to ensure a smooth transition of custody, possession, and control of the operations at Union Station, i.e. being in charge of the property. Contrary to Lender's actions authorized under the Loan Documents, Ashkenazy refused to step down as manager and directed counsel purportedly acting on behalf of USI and USSM to consent to the re-appointment of JLL. This direction (made without authority) triggered the Custodian Provision, which provides a full recourse of the associated debt if the borrower (USI or USSM)

"consents to or acquiesces in or joins in an application for the appointment of a custodian . . . other than in connection with a request or action commenced by Lender or its affiliate." Nothing in the Custodian Provision limits its application to the bankruptcy context. "Custodian" is undefined in the documents, but the plain meaning of the word demonstrates that JLL can be characterized as a custodian. If the parties intended to bind "custodian" to the bankruptcy context, they could have easily done so, but they did not. As described *infra*, the Court should not imply excluded terms in a contract, particularly on a motion to dismiss.

Accordingly, Lender respectfully requests the Court to deny Ashkenazy's Motion in its entirety.

## STATEMENT OF FACTS[3]

### A.     The Loan Documents and Subject Guaranties

This action involves two loans for the leasehold interest in Union Station: the Mortgage Loan, having an original principal balance of $330 million, with USI as Mortgage Borrower and the Mezz Loan, having an original principal balance of $100 million, with USSM as Mezz Borrower. (AC ¶¶ 9-11.) In connection with the two loans, Ashkenazy unconditionally guaranteed payment and performance of certain Guaranteed Obligations, including the recourse obligations of the respective borrower, by entering into the Mortgage and Mezz Guaranties.[4] (*Id.* at ¶ 38.) Neither the Mortgage nor the Mezz Loan is a recourse loan unless a recourse trigger event occurs. (*Id.* at ¶ 39.) If one does occur, Lender can seek a money judgment against Ashkenazy. (*Id.*)

---

[3]      On a motion to dismiss all factual allegations from the Amended Complaint must be accepted as true. *Blue True Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).

[4]      The Guaranteed Obligations are defined as "(i) Borrower's Recourse Liabilities and (ii) from and after the date that any Springing Recourse Event occurs, payment of the entire Debt." (Declaration of Michael Rebibo, dated December 12, 2022 ("Rebibo Decl."), Ex. B at § 1.1(a), Ex. D at § 1.1(a).) The Court can consider the documents attached to the Rebibo Declaration on judicial notice. *See New York ex rel. TZAC, Inc. v. New Israel Fund*, 520 F. Supp. 3d 362, 375 (S.D.N.Y. 2021) (Woods, J.) ("For a document to be incorporated by reference, the complaint must make a 'clear, definite, and substantial reference' to it." (citation omitted)).

Upon the occurrence of a Springing Recourse Event, the respective Mortgage and/or Mezz Loans become fully recourse. (*Id.* at ¶ 40.) For purposes of this litigation, the Custodian Provision makes the respective loan fully recourse "in the event that . . . any Affiliate, officer, director, or representative which Controls Borrower consents to or acquiesces in or joins in an application for the appointment of a custodian, receiver, trustee, or examiner for Borrower or any portion of the Property other than in connection with a request or action commenced by Lender or its affiliate." (*Id.* at ¶ 41.) As described below, Lender alleges that Ashkenazy triggered the Custodian Provision under both the Mortgage and Mezz Guaranties.

In addition to a Springing Recourse Event, Lender may seek a money judgment against Ashkenazy for "actual loss, damage, cost, [or] expense . . . incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with" certain misconduct—the Recourse Liabilities. (*Id.* at ¶ 42.) Lender alleges that Ashkenazy triggered the Recourse Liabilities under the Misrepresentation and Misconduct Provisions. (*Id.* at ¶¶ 117-38.) Ashkenazy incurs liability under the Misrepresentation Provision by making an "intentional material misrepresentation in writing . . . in connection with the Loan." (*Id.* at ¶ 42.) Ashkenazy incurs liability under the Misconduct Provision by acting with "the gross negligence or willful misconduct . . . in connection with the Loan." (*Id.*)

Ashkenazy's Guaranties are "irrevocable, absolute, continuing guarant[ies] of payment and performance as and when due of the Guaranteed Obligations and not [] guarant[ies] of collection," pursuant to which Lender has no obligation to pursue remedies against others or the collateral prior to seeking recovery from Ashkenazy. (Rebibo Decl., Ex. B at §§ 1.2, 1.5, Ex. D at §§ 1.2, 1.5.) In both the Mortgage and Mezz Guaranties, Ashkenazy further agreed that the "fact that at any time or from time to time the Guaranteed Obligations may be increased or reduced shall not release

or discharge the obligation of Guarantor to Lender with respect to the Guaranteed Obligations." (*Id.* at § 1.2.)  Ashkenazy also agreed that he would be "liable for the payment of all reasonable, out-of-pocket costs and expenses (including actual court costs and reasonable attorneys' fees)" incurred by Lender in the enforcement of its rights, and that such obligation to reimburse Lender "survive[s] the payment and performance of the Guaranteed Obligations."  (*Id.* at § 1.7.)

### B. USI and USSM Default on the Loans, and Lender Exercises its Rights

In May 2020, both USI and USSM separately defaulted on their respective loans.  (*Id.* at ¶¶ 12-13.)  At the time, USI's loan was held by the Original Mortgage Lender, who would go on to notice a foreclosure sale on the Mortgage Loan for January 2022.  (*Id.* at ¶ 17.)  After USSM failed to pay on its debts, Lender accelerated the Mezz Loan and also noticed a UCC foreclosure sale to be held in January 2022.  (*Id.* at ¶¶ 16, 18.)  Before the sale, Lender purchased the Mortgage Loan and cancelled both of the pending foreclosure sales, even though USI and USSM continued to be in default.  (*Id.* at ¶¶ 19-20.)

On April 14, 2022, Amtrak commenced the Condemnation Action over the leasehold interest held by USI.  (*Id.* at ¶ 23.)  Lender, USI, and USSM are all challenging Amtrak's authority to take the leasehold interest in Union Station by eminent domain.  (*Id.*)  USI remains in current possession of the leasehold.  (*Id.* at ¶ 25.)

On April 28, 2022, pursuant to its rights and remedies under the Loan Documents, Lender terminated JLL as the property-management company for Union Station.  (*Id.* at ¶ 49.)  On May 13, 2022, Lender exercised its rights under the Pledge Agreement (made in connection with the Mezz Loan Agreement) to replace Ashkenazy as manager of USI.  (*Id.* at ¶ 50.)

On May 13, 2022, Lender noticed a second UCC foreclosure sale on the Mezz Loan to be held in June 2022.  (*Id.* at ¶ 26.)  The UCC foreclosure sale proceeded as planned, with Lender

purchasing USSM's collateral (the "USI Equity") by credit bid. (*Id.* at ¶ 27.) Neither Ashkenazy nor USSM challenged or objected to the foreclosure sale before it occurred. (*Id.* at ¶ 28.)

### C. The Court Enjoins USSM's Interference With the USI Equity

Ashkenazy and USSM, however, refused to cede control of USI, so Lender brought the Declaratory Judgment Action before this Court to validate the foreclosure sale, indexed at *Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*, 1:22-cv-06649-GHW (S.D.N.Y.). (*Id.* at ¶¶ 29-31.) On August 25, 2022, after holding a hearing on the issues, the Court issued a preliminary injunction order to enjoin USSM from holding itself out as the owner or in control of USI, among other restrictions. (*Id.* at ¶¶ 32-33.) Although Lender requested USSM to consent to judgment in the Declaratory Judgment Action, USSM filed an answer and continues to dispute the validity of the foreclosure sale. (*Id.* at ¶¶ 31, 34.)[5] At the time of this filing, there remains a justiciable controversy regarding the effect of the foreclosure sale before this Court.

### D. Ashkenazy Triggers Recourse Under the Mortgage and Mezz Guaranties

After Lender terminated JLL and appointed a new manager for USI pursuant to the Loan Documents, the new manager sought to engage a new property-management company on behalf of USI. (*Id.* at ¶ 51.) Ashkenazy refused to relinquish control over USI and coordinated with Amtrak to block, hinder, and frustrate Lender's exercise of rights and remedies under the Loan Documents. (*Id.* at ¶¶ 51-52.) Amtrak moved for an order to enjoin any defendant in the Condemnation Action from terminating JLL as property manager. (*Id.* at ¶ 53.)

Ashkenazy directed counsel purportedly representing USI and USSM to consent to Amtrak's order under the guise of "preserv[ing] the status quo of Union Station management."

---

[5] The letter sent to counsel, dated September 29, 2022, is attached as Exhibit A to the declaration of Y. David Scharf, dated December 12, 2022. The letter was incorporated by reference in the Amended Complaint, allowing the Court to take judicial notice of its contents. *See New York ex rel. TZAC, Inc*, 520 F. Supp. 3d at 375.

(*Id.* at ¶ 56.)  JLL is a custodian who had charge of Union Station under USI's direction.  (*Id.* at ¶ 59.)  Because Lender had already terminated JLL at this point, the consent to Amtrak's request that JLL remain as property manager constituted consent to the appointment of an alternate custodian to manage the property, triggering a Springing Recourse Event under both the Mortgage and Mezz Guaranties.  (*Id.* at ¶¶ 57-60.)  On June 26, 2022, Ashkenazy directed counsel to file a letter purportedly on behalf of USI and USSM opposing Lender's Emergency Motion to contract with a new property manager, representing that JLL continued to manage Union Station "pursuant to an existing management contract."  (*Id.* at ¶ 67.)  On June 30, 2022, Ashkenazy directed counsel to file a Limited Opposition purportedly on behalf of USI and USSM to the same effect.  (*Id.* at ¶ 71.)  Ashkenazy has thus far refused to pay the full debt of the Mortgage and Mezz Loans.  (*Id.* at ¶¶ 101, 115.)  Lender's first and second claims concern the breach of the Mortgage and Mezz Guaranties for Springing Recourse pursuant to the Custodian Provision.  (*Id.* at ¶¶ 89-116.)

In the context of the Condemnation Action, the Declaratory Judgment Action, and other acts of misconduct, Ashkenazy has directly interfered, hindered, and frustrated Lender's rights under the Mortgage and Mezz Loan Agreements.  (*Id.* at ¶¶ 80, 85.)  The Amended Complaint details Ashkenazy's misrepresentations, willful misconduct, and gross negligence with each allegation separately delineating whether the action triggered recourse under the Mortgage or Mezz Guaranty or both.  (*Id.*)  As a result of Ashkenazy's actions, Lender has incurred damages, including over $1 million in attorneys' fees and costs spent to enforce Lender's rights under the Loan Documents, costs associated with late payments and shutoff notices, and opportunity costs.  (*Id.* at ¶¶ 125, 136.)  Under the Recourse Liabilities, Ashkenazy is liable for any actual loss, damages, or costs associated with the recourse event.  (*Id.* at ¶ 42.)  Ashkenazy has thus far refused

to pay Lender's sustained damages. (*Id.* at ¶¶ 127, 138.) Lender's third and fourth claims concern the breach of the Mortgage and Mezz Guaranties for Recourse Liabilities. (*Id.* at ¶¶ 117-38.)

## ARGUMENT

On a motion to dismiss, the Court must accept all factual allegations as true and take all inferences in the plaintiff's favor to decide whether the allegations state a plausible claim. *Blue Tree Hotels Inv. (Canada), Ltd.*, 369 F.3d at 217. Lender's allegations in the Amended Complaint meet this liberal standard. *See CP III Rincon Towers, Inc. v. Cohen*, No. 10 Civ. 4638 (DAB), 2011 WL 651434 (S.D.N.Y. Feb. 16, 2011) (denying motion to dismiss a claim for breach of recourse obligations in guaranty).[6]

All of Lender's claims allege breach of contract. To state a breach of contract, the plaintiff must show "(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach." *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 112 (S.D.N.Y. 2018) (citation omitted). Lender has met this burden for each of its claims to survive Ashkenazy's Motion.

## I. THE FORECLOSURE SALE DOES NOT NULLIFY ASHKENAZY'S OBLIGATIONS UNDER THE MEZZ GUARANTY

### A. Ashkenazy Remains Liable for Recourse Liabilities Notwithstanding the Foreclosure Sale

According to Ashkenazy, Lender can only recover damages incurred from Ashkenazy's misconduct up to the amount of the principal debt of the Mezz Loan. That is not the law. Indeed, none of the cases cited by Ashkenazy support the proposition that a lender cannot recover losses, costs, or other expenses from a guarantor because the principal amount due under the

---

[6]     Although the court later determined at the summary judgment posture that the guarantor did not trigger the guaranty recourse provisions, the court's analysis was aided by discovery, which has not occurred here. *See CP III Rincon Towers, Inc. v. Cohen*, 10-CV-4638 (JMF), 2022 WL 61318 (S.D.N.Y. Jan. 6, 2022).

corresponding loan had been satisfied. Rather, Ashkenazy cites to cases that support holding a guarantor liable for associated costs. *See U.S. Bank Nat'l Ass'n v. Lightstone Holdings LLC*, 66 Misc. 3d 1232(A) at *8 (Sup. Ct. N.Y. Cnty. 2020) (calculating deficiency as including costs, expenses, and attorneys' fees incurred in litigation and collection efforts), *aff'd*, 196 A.D.3d 445 (1st Dep't 2021), *lv to appeal denied sub nom.*, 38 N.Y.3d 913 (2022). Courts routinely award costs and expenses to a lender when a guarantor agreed to be liable for those expenses. *See, e.g.*, *U.S. Bank Nat'l Ass'n v. Kobernick*, 454 F. App'x 307 (5th Cir. 2011) (affirming award of attorneys' fees contemplated in guaranty even though amount obtained at foreclosure sale was greater than debt); *KLS Diversified Master Fund, L.P.*, 507 F. Supp. 3d at 546 (discussing obligations as including principal, interest, expenses, and fees); *Wells Fargo Bank, N.A. v. RLJ Lodging Tr.*, No. 13 C 758, 2016 WL 427487 (N.D. Ill. Feb. 4, 2016) (discussing liability for losses separate from balance left on loan as recoverable under non-recourse guaranty); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, No. 08 Civ. 6131(DLC), 2010 WL 1141145, at *5-6 (S.D.N.Y. Mar. 24, 2010) (awarding attorneys' fees and expenses incurred from enforcing rights under guaranty), *aff'd sub nom.*, *HSH Nordbank AG New York Branch v Street*, 421 F. App'x. 70 (2d Cir. 2011).

Here, Section 11.22 explicitly states that Ashkenazy is liable for "actual loss, actual damage, cost, expense, actual liability, claim or other actual obligation incurred by Lender (including attorneys' fees and costs reasonably incurred) arising out of or in connection with" one of the listed Recourse Liabilities. (Rebibo Decl., Ex. C at § 11.22.) The terms used therein should be enforced based on their plain meanings. *Chesapeake Energy Corp. v. The Bank of New York Mellon Tr. Co., N.A.*, No. 13 Civ. 1582 (PAE), 2015 WL 4191419 (S.D.N.Y. July 10, 2015), *aff'd*, 837 F.3d 146 (2d Cir. 2016). None of the language in Section 11.22 limits Lender's recovery to the principal amount of the Mezz Loan. *See W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157,

163 (1990) ("By ignoring the plain language of the contract, plaintiff effectively rewrites the bargain that was struck."). Nor does the provision prevent Lender from recovering on damages incurred after a foreclosure sale, especially when Ashkenazy continues to refuse to recognize the exercise of Lender's rights under the Mezz Loan.[7] *See Vermont Teddy Bear Co, Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.") (citation omitted). This is particularly true here where the Mezz Guaranty expressly contemplates that Ashkenazy remain liable for costs above and beyond the principal amount and survives repayment. (Rebibo Decl., Ex. D at § 1.7.) The debt continues to grow post-foreclosure as a result of Ashkenazy's challenges to Lender's exercise of rights.[8]

Accordingly, under the terms of the Mezz Guaranty, Ashkenazy is personally liable for damages that arise out of or in connection with a Recourse Liability, including the Misrepresentation and Misconduct Provisions. The Amended Complaint identifies damages incurred by Lender from Ashkenazy's conduct in connection with the Mezz Loan. (AC ¶ 136.) Specifically, Lender was forced to file a separate lawsuit to validate the foreclosure given Ashkenazy's continued interference and numerous misrepresentations regarding the control over the USI Equity. (AC ¶¶ 29-35.) Ashkenazy's Motion ignores that Lender is a plaintiff in that related proceeding, sustaining costs and expenses for as long as Ashkenazy continues to assert meritless defenses. (Motion at 16 n.14.) To clarify Ashkenazy's latest misstatements, Lender

---

[7] Given that the validity of the foreclosure sale remains pending before this Court in the Declaratory Judgment Action, dismissal on this basis would be premature. *See infra* Section I(B).

[8] Under the Mezz Loan Agreement, "Debt" is defined as "the Outstanding Principal Balance, together with all interest accrued and unpaid thereon, any applicable Prepayment Fee and **all other sums due to Lender in respect of the Loan under the Note, this Agreement or any other Loan Document**." (Rebibo Decl., Ex. C at § 1.1 (emphasis added).) Section 11.22 explicitly makes Ashkenazy liable to Lender for the costs and expenses, including attorneys' fees, arising out of one of the Recourse Liabilities. (AC ¶ 42.)

seeks only to recover on *its* losses, actual damages, costs, and expenses through this action—all of which are expressly provided for by the terms of the Mezz Guaranty.

### B. The Satisfaction of the Mezz Loan Remains Disputed, Making Dismissal Premature

At the same time Ashkenazy seeks dismissal of the Amended Complaint based on the satisfaction of the Mezz Loan by a successful foreclosure sale, Ashkenazy disputes the validity and effect of the foreclosure sale in a related action before this Court, the Declaratory Judgment Action. If Ashkenazy succeeds in both actions, therefore, Ashkenazy would unwind the foreclosure sale and regain control over the collateral, yet walk away unscathed after triggering liability under Springing Recourse of the Mezz Guaranty.[9] Unless Ashkenazy is conceding that his defenses lack merit and that USSM will consent to judgment in Lender's favor in the Declaratory Judgment Action, Ashkenazy's arguments for dismissal are nothing more than another attempt to avoid liability for his actions in contravention of the Loan Documents.

The Amended Complaint details how Lender properly exercised its rights to foreclose on the Mezz Loan, with the foreclosure sale concluding on June 14, 2022. (AC ¶¶ 26-28.) The Amended Complaint also describes how USSM—at Ashkenazy's direction—refused to recognize the validity of the foreclosure sale. (AC ¶ 29.) In the face of continued interference, Lender was forced to bring the Declaratory Judgment Action. (AC ¶ 30.) USSM opposed Lender's complaint and refused to consent to judgment in that action. (AC ¶¶ 31, 34.) The Court can take judicial notice of Ashkenazy's legal positions in the Declaratory Judgment Action, as well as the

---

[9] Contrary to Ashkenazy's characterization (Motion at 15), Lender's claim under Springing Recourse is not "predicated on the effectiveness of the foreclosure" because the claim focuses on Lender's exercise of rights to terminate JLL and replace Ashkenazy as manager of USI. (AC ¶¶ 106-10.) Although the fourth claim on Recourse Liabilities under the Mezz Guaranty includes misrepresentations and misconduct connected to the foreclosure sale, Ashkenazy's liabilities for costs and expenses incurred by Lender are not limited to the debt owed on the principal balance of the Mezz Loan.

documents directly incorporated by reference in the Amended Complaint. *See New York ex rel. TZAC, Inc.*, 520 F. Supp. 3d at 375.

Whether the Mezz Loan has been satisfied by the foreclosure sale is an issue currently pending before this Court. Dismissal on this basis is premature, and Lender sufficiently pleads a plausible claim for relief. *See GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*, No. 07 Civ. 10394 (NRB), 2008 WL 3891257, at *4 (S.D.N.Y. Aug. 21, 2008) (refusing to offset amount "presently due and payable" under guaranty that "has not yet been established by final judgment").

### C. Lender Can Seek Judgment Under Mezz Guaranty Without First Resorting to Collateral

Although Ashkenazy refers to Lender's claim for damages under the Mezz Guaranty's Springing Recourse as a "windfall or double recovery" (Motion at 16), Lender is entitled to seek judgment under the Mezz Guaranty without first resorting to the pledged collateral. (Rebibo Decl., Ex. D at § 1.5.) This issue is explored at length in a recent case, indexed at *KLS Diversified Master Fund, L.P.,* 507 F. Supp. 3d 508 (S.D.N.Y. 2020) and at 532 F. Supp. 3d 126 (S.D.N.Y. 2021), both affirmed at 2022 WL 2759055 (2d Cir. July 13, 2022).

In that case, the debtor defaulted on a loan, and the lender provided notice that the lender would sell the pledged assets at a public foreclosure sale. 507 F. Supp. 3d at 526. At the sale, the lender took title to the debtor's collateral. *Id.* The lender subsequently filed the breach of guaranty action to recover payment due under the note. *Id.* Similar to Ashkenazy here, the guarantor argued that the foreclosure extinguished the guarantor's liability. *Id.* at 532. However, the Court held that the language of the agreements did not release the guarantor's liability, granting summary judgment on liability for the lender. *Id.* at 547. Regarding the amount owed, the guarantor argued that the total amount due should be reduced by the value of the collateral. *KLS Diversified Master*

*Fund, L.P.,* 532 F. Supp. 3d at 131. The Court disagreed, finding that the guaranty's language was clear and unambiguous regarding the lender's ability "to seek judgment under the Guaranty against [the guarantor] without first resorting to [the debtor's] assets, i.e., the Collateral." *Id.* at 133. The lender's "choice to foreclose on the Collateral did not relieve [the guarantor] of his obligations with respect to the full amount due and owing." *Id.* at 135.

In a similar manner, Lender took title to the collateral secured for the Mezz Loan, i.e. the USI Equity, at the foreclosure sale by credit bid. The lawsuit here alleges breach of the Mezz Guaranty for the misconduct by Ashkenazy that triggered Springing Recourse and, as discussed *infra*, various Recourse Liabilities. The Mezz Guaranty specifies that "the liabilities and obligations of Guarantor to Lender hereunder shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower . . . ." (Rebibo Decl., Ex. D at § 1.3.) As with the lender in *KLS Diversified Master Fund, L.P.*, Lender's rights and remedies exercised under the Mezz Loan—including the foreclosure sale—were cumulative to the remedies specified in the Mezz Guaranty. (Rebibo Decl., Ex. C at § 10.4.) Lender is entitled to pursue action against Ashkenazy for the obligations he guaranteed regardless of the fact that an affiliate of Lender now holds the collateral. "New York law 'provides that, as a matter of law, it is not commercially unreasonable for a secured party to litigate damage claims on a debt while continuing to hold the secured property.'" *KLS Diversified Master Fund, L.P.,* 532 F. Supp. 3d at 135 (citation omitted). Applying the law to the case here does not provide for a double recovery or windfall as Ashkenazy claims.[10]

---

[10] The cases cited by Ashkenazy are inapposite, particularly given the procedural postures. *See, e.g.*, *U.S. Bank Nat'l Ass'n*, 66 Misc. 3d 1232(A) (ruling from post-trial briefing); *S. Shore Fed. Sav. & Loan Ass'n v. Mikary Realty Corp.*, 100 Misc. 2d 196 (N.Y. Sup. Ct. Suff. Cnty. 1978) (ruling on motion to vacate judgment and stay foreclosure sale), *aff'd*, 65 A.D.2d 620 (2d Dep't 1978). Specifically, the debtor in *Sweeters v. Hodges* was not in default, so no amount was due under the guaranty when the Court ruled on summary judgment. 256 A.D.2d 185 (1st Dep't 1998).

## II.   LENDER'S ALLEGATIONS SUPPORT THE CLAIMS TO HOLD ASHKENAZY LIABLE FOR TRIGGERING RECOURSE LIABILITIES

### A.   Lender's Allegations Support Enforcing Liability Against Ashkenazy for Costs and Expenses Incurred in Connection With the Mortgage Loan

Ashkenazy seeks to avoid liability for his intentional misrepresentations, willful misconduct, and gross negligence on the basis that Amtrak's filing of the Condemnation Action establishes that Lender can have no damages in connection with a breach of the Mortgage Guaranty. (Motion at 17.) Ashkenazy is wrong, and unsurprisingly fails to point to any language in the Mortgage Guaranty or at law that could support this radical position—because there is none. Lender still retains an interest in the Mortgage Loan. (Rebibo Decl., Ex. A at § 5.2.2 ("Notwithstanding any Condemnation, Borrower shall continue to pay the Debt at the time and in the manner provided for in this Agreement, the Note and the other Loan Documents.").) Similarly, the Mortgage Guaranty holds Ashkenazy personally liable if he engages in certain conduct, and the Condemnation Action does not shield him from that liability. (*Id.* at § 11.22.)

The Amended Complaint supports finding Ashkenazy personally liable for costs and expenses incurred from triggering the Recourse Liabilities in connection with the Mortgage Loan. Although Ashkenazy claims that the alleged misconduct concerns only the exercise of rights under the Mezz Loan (Motion at 18-20), the argument is premised on a severe misreading of the Mortgage Guaranty.[11] Sections 11.22(i) and (ii) provide liability for costs and expenses that arise out of material misrepresentations, willful misconduct, and gross negligence made "in connection

---

Ruling pre-answer and pre-discovery that Lender is precluded from recovering under the Mezz Guaranty would be premature. The cases likewise do not support that Lender cannot seek additional costs and expenses under the Recourse Liabilities. (Motion at 16.)

[11]    Ashkenazy conflates allegations that are explicitly delineated as referring only to the Mezz Loan and Mezz Guaranty as not alleging breach of contract against the Mortgage Lender. (Motion at 20-21.) For example, Paragraphs 85(a) and (g) of the Amended Complaint contain allegations tailored to the Mezz Loan and do not allege a breach of the guaranty under the Mortgage Loan. (AC ¶ 85(a), (g).)

with the Loan." (AC ¶¶ 120, 122.)  Ashkenazy does not have to interfere with Lender's exercise of rights under the loan; the misconduct simply must be made *in connection with* the loan.

The Amended Complaint identifies eleven misrepresentations that concern the Mortgage Borrower and Mortgage Loan. (*Id.* at ¶ 121.)  Some of these misrepresentations also relate to the exercise of Lender's rights under the Mezz Loan, which are reflected in the fourth claim regarding the Mezz Guaranty.  However, each of these allegations are tailored carefully to focus on the Mortgage Borrower and Mortgage Loan.  The misrepresentations made by ArentFox and Kasowitz were made on behalf of the Mortgage Borrower. (*Id.* at ¶¶ 80(a)-(b), (d)-(f); 121(a)-(b), (d)-(g).) Joe Press's email misrepresented Ashkenazy as the manager of the Mortgage Borrower. (*Id.* at ¶¶ 80(c); 121(c).)  The documents filed in the Declaratory Judgment Action misrepresent Lender's consent authority as it relates to USI's default under the Mortgage Loan. (*Id.* at ¶¶ 80(g)(ii)-(iv); 121(h)-(i).)  Ashkenazy misrepresented Lender's ability to act as attorney-in-fact under Section 5.2.2 of the Mortgage Loan Agreement. (*Id.* at ¶¶ 80(h); 121(j).)  The letter written to counsel misrepresented that Lender had no right to control the operating expenses at Union Station contrary to Lender's rights under the Mortgage Loan during USI's default. (*Id.* at ¶¶ 80(i); 121(k).)

The Amended Complaint identifies seven acts of willful misconduct and/or gross negligence that similarly concern the Mortgage Borrower and Mortgage Loan.  Ashkenazy directed that the Mortgage Borrower could not enter into a direct contractual relationship with JLL. (*Id.* at ¶¶ 85(b); 123(a).)  Ashkenazy directed the Mortgage Borrower to withhold information from Lender needed to fund obligations at Union Station given USI's default. (*Id.* at ¶¶ 85(c), (f); 123(b), (e).)  Ashkenazy misdirected third parties to himself as the purported manager of the Mortgage Borrower. (*Id.* at ¶¶ 85(d); 123(c).)  Ashkenazy provided conflicting information to JLL as to who controls the Mortgage Borrower, thereby controlling property management of Union

Station.  (*Id.* at ¶¶ 85(e); 123(d).)  Ashkenazy struck language that Lender had the right to serve as attorney-in-fact under Section 5.2.2 of the Mortgage Loan Agreement.  (*Id.* at ¶¶ 85(h)(vi); 123(f).)  Finally, the misrepresentations described above that relate to the Mortgage Loan and Mortgage Borrower constitute willful misconduct and/or gross negligence as well.  (*Id.* at ¶¶ 85(h); 123(g).)

Finally, Ashkenazy's argument that the Condemnation Action absolves him of paying damages under the Mortgage Guaranty also fails for the independent reason that the propriety of Amtrak's condemnation of Union Station has not even been decided.  Taking Ashkenazy's argument to its fullest, after Amtrak filed for condemnation on the leasehold interest of Union Station, Ashkenazy could act with impunity—even though all defendants in the Condemnation Action dispute whether Amtrak has acted within its statutory authority.  If Lender, USI, and USSM win on the improper taking issue, the title of the leasehold interest reverts back to USI—and what of the damage caused by Ashkenazy?  Ashkenazy's argument, therefore, is unfounded.

### B.    Lender Has Sufficiently Pleaded Intentional Misrepresentations

Lender's third and fourth claims concern how Ashkenazy triggered the Recourse Liabilities, in part, by making an "intentional material misrepresentation in writing" in connection with either the Mortgage or Mezz Loan.[12]  (AC ¶¶ 120-21, 131-32.)  Relying on elements of common law fraud rather than the contractual language, Ashkenazy argues that the allegations fail to meet the higher pleading standard for fraud.  (Motion at 21-23.)  However, the allegations here are based on breach of contract—not common law fraud.  *See Hudson Bay Master Fund*, 309 F. Supp. 3d at 113 (denying motion to dismiss counterclaim alleging false representations when

---

[12]    Ashkenazy's argument that certain allegations describe misrepresentations not made "in connection with the Loan" (Motion at 22 n.22) can be defeated upon a quick review of these allegations.  Paragraph 80(e)(i) refers to a misrepresentation Ashkenazy himself connected to the Loan Documents, Paragraph 80(e)(ii) refers to a misrepresentation relating to Lender's consent rights under the Mortgage and Mezz Loans during an event of default, and Paragraph 80(f) refers to separate but similar misrepresentations.  (AC ¶ 80.)

sufficiently pleaded elements for breach of contract); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480-81 (S.D.N.Y. 2010) (dismissing fraud and material misrepresentation claims that "are merely allegations that defendants breached contractual obligations they owed" plaintiff, but retaining breach of contract claims). Ashkenazy's citations to case law based on fraud are inapplicable to these claims. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017) (claiming common law fraud and intentional misrepresentation).

This difference is further highlighted in the language of the Mortgage and Mezz Guaranties that provide for "fraud **or** intentional material misrepresentation in writing." (Rebibo Decl., Ex. A at § 11.22(i); Ex. C at § 11.22(i) (emphasis added).) The disjunctive "or" demonstrates that a Recourse Liability based on fraud is different than one based on material misrepresentation. *See Portside Growth & Opportunity Fund v. Gigabeam Corp., Inc.*, 557 F. Supp. 2d 427, 431 (S.D.N.Y. 2008) (defining "or" "to express an alternative or to give a choice of one among two or more things" (citation omitted)). In *Brown v. Lower Brule Cmty. Dev. Enter., L.L.C.*, the plaintiff alleged that defendant triggered a fraud recourse event—not material misrepresentation. No. 13-cv-7544 (PKC), 2014 WL 5508645, at *2 (S.D.N.Y. Oct. 31, 2014). The Second Circuit made this distinction clear on appeal in finding that the plaintiff forfeited the argument that defendant's promise triggered a material misrepresentation recourse event. *Aff'd sub nom,* 606 F. App'x 626, 628 n.2 (2d Cir. 2015).

The third and fourth claims adequately allege the existence of the Guaranties, the performance by Lender, the non-performance by Ashkenazy, and the resulting damages. (AC ¶¶ 118-21, 124-27, 129-32, 135-38.) Satisfying the heightened pleading standard for common law fraud, intentional misrepresentations, or negligent misrepresentations is not necessary here. Lender adequately alleges that Ashkenazy misrepresented various facts, not mere legal opinions,

18

to third parties.[13]  (Motion at 22.)  For example, Ashkenazy misrepresented who controlled USI, that Ashkenazy remained USI's manager, that Lender withheld consent in a proposed investment, that Lender interfered with tenants, that Lender had no right to control the operating expenses at Union Station, among others.  (AC ¶¶ 121, 132.)  Similarly, Ashkenazy's argument that the misrepresentations are protected by litigation privilege is without merit. (Motion at 23.)  The cases referenced in the Motion provide protection against tortious claims.  *See Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 455-56 (E.D.N.Y. 2013) (defamation); *Geer v. Gates Chili Cent. Sch. Dist.*, 321 F. Supp. 3d 417, 422 (W.D.N.Y. 2018) (intentional infliction of emotional distress and fraudulent misrepresentation), *aff'd sub nom., Geer v. Emp. Health Referral Sys., Inc.*, 768 F. App'x 55 (2d Cir. 2019).  Here, Lender merely seeks to hold Ashkenazy to his contractual promises in which he agreed to not make a material misrepresentations in writing.  *See Rapaport v. Strategic Fin. Sols., LLC*, 190 A.D.3d 657, 658 (1st Dep't 2021) (denying motion to dismiss breach of contract claim on basis of litigation privilege because there was "no authority for his apparent assertion that it immunizes breaches of contractual confidentiality provisions"); *Citibank, N.A. v. Uri Schwartz & Sons Diamonds Ltd.*, 97 A.D.3d 444, 447 (1st Dep't 2012) (holding guarantor liable for language agreed to in guaranty).

## C.    Lender Has Sufficiently Pleaded Willful Misconduct and Gross Negligence

The other aspect of Lender's third and fourth claims concern how Ashkenazy triggered the Recourse Liabilities by engaging in willful misconduct and/or gross negligence in connection with

---

[13]      The case law relied on by Ashkenazy stands for the proposition that fraudulent representations could not be based on legal arguments and opinions.  *See Carolina Cas. Ins. Co. v. Capital Trucking, Inc.*, 523 F. Supp. 3d 661, 680 (S.D.N.Y. 2021) (finding legal opinions not cognizable as fraud); *Singh v. NYCTL 2009-A Tr.*, 14 Civ. 2558, 2016 WL 3962009, at *7-8 (S.D.N.Y. July 20, 2016) (finding that allegations "as to what the law requires to be done" and "what the law will not permit to be done" could not amount to claim for mail and wire fraud); *Charid Props. v. Berger*, 37 A.D.2d 987, 987 (2d Dep't 1971) (finding legal interpretation not cognizable as fraud).  Contrary to those cases, Lender's allegations on based on material facts that Ashkenazy directed counsel to misrepresent.

the Mortgage or Mezz Loan. (AC ¶¶ 85, 122-23, 133-34.) Contrary to Ashkenazy's broad-sweeping argument, the allegations in the Amended Complaint detail how Ashkenazy's conduct rose to the level of willful misconduct or, at the very least, gross negligence. (Motion at 24.) Willful misconduct requires pleading facts that can support "a conscious indifference or I don't care attitude which is the prerequisite of wanton behavior." *Taylor Precision, Prods., Inc. v. Larimer Grp., Inc.*, 1:15-cv-4428 (ALC), 2022 WL 336953, at *16 (S.D.N.Y. Feb. 4, 2022) (citation omitted). Gross negligence requires pleading facts that can support "a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Id.* (citation omitted).

The allegations meet this standard. Ashkenazy knew and understood the explicit terms of the Mortgage and Mezz Loan Agreements, yet directed parties to act against Lender when Lender sought to enforce its bargained-for rights during default under the loans. (AC ¶ 85(a)-(f), (i).) In direct conflict with the contractual provisions, Ashkenazy made misrepresentations regarding control over USI in an attempt to avoid the consequences of default. (*Id.* at ¶ 85(h).) These detailed allegations demonstrate an intentional frustration of Lender's contractual rights to constitute willful misconduct. *See U.S. Bank Nat'l Ass'n as Tr. v. Wildstein*, No. 1:19-cv-1151-LMM, 2020 WL 4730983, at *5 (N.D. Ga. Jan. 14, 2020) (finding willful misconduct where guarantor deprived lender its bargained-for benefits), *aff'd*, No. 21-12780, 2022 WL 1222275 (11th Cir. Apr. 26, 2022). But, at the very least, these allegations smack of intentional wrongdoing to satisfy the gross negligence standard.[14] *See Wells Fargo Tr. Co., Nat'l Ass'n v. Markoff*, No. C17-1862-JCC, 2019 WL 937699, at *6 (W.D. Wash. Feb. 26, 2019) (finding borrower's gross negligence triggered recourse obligations in guaranty).

---

[14]     As previously addressed, the litigation privilege relied on by Ashkenazy does not apply to breach of contract claims. *See supra* Section II(B).

Indeed, in the Declaratory Judgment Action, the Court recognized that Ashkenazy has intentionally thwarted Lender's exercise of rights. At the preliminary injunction hearing to enjoin USSM from improperly holding itself out as the owner of USI, the Court stated:

> To the extent that Defendants [USSM] are asserting rights as owners of USI, or control rights over USI notwithstanding their failure to pay the loans when due, and the resulting default and foreclosure, **they are interfering with Lender's ability to operate the company** that they have a strong likelihood of showing they now own.

(*Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*, 1:22-cv-06649-GHW (S.D.N.Y.), ECF Doc. No. 49, 38:2-7 (emphasis added).) The Court continued that Lender has "sufficiently shown irreparable harm because the Defendant [USSM] has unnecessarily frustrated Lender's efforts to participate in the management of USI." (*Id.* at 40:14-17.) Ashkenazy's actions constitute willful misconduct with the respective loans or, at the very least, gross negligence, making him personally responsible for the costs and expenses incurred.

## III. LENDER STATES A CLAIM FOR BREACH OF THE SPRINGING RECOURSE PROVISIONS UNDER BOTH THE MORTGAGE AND MEZZ GUARANTIES

Lastly, Lender sufficiently states a claim for breach of contract regarding Springing Recourse under the Mortgage and Mezz Guaranties. Pursuant to the Custodian Provision, the respective borrower cannot "consent[] to or acquiesce[] in or join[] in an application for the appointment of a custodian . . . other than in connection with a request or action commenced by Lender or its affiliate." (AC ¶¶ 93, 107.) Lender alleges that Ashkenazy directed counsel to consent to Amtrak's request to have JLL serve as the property manager (i.e. the custodian) of Union Station after Lender terminated JLL. (*Id.* at ¶¶ 92-96, 106-10.) Although framed as "preserv[ing] the status quo" (*id.* at ¶¶ 96(a), 110(a)), since JLL had been terminated by Lender prior to Amtrak's request, Ashkenazy's consent and acquiescence constituted an appointment

anew (*id.* at ¶¶ 60). Therefore, Ashkenazy's conduct triggered Springing Recourse of both Guaranties, making Ashkenazy personally liable for the debt owed under the respective loans.

Ashkenazy relies on a narrowed reading of "custodian" to defeat Lender's claim on a motion to dismiss, but the parties did not intend for such a limited context. Ashkenazy admits that "custodian" is undefined in the Mortgage and Mezz Loan Agreements. (Motion at 9.) When interpreting the language, therefore, "[t]he words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. The Bank Of New York Mellon Tr. Co., N.A.,* 773 F.3d 110, 114 (2d Cir. Nov. 25, 2014) (citation omitted). Although "custodian" can be used in bankruptcy contexts as Ashkenazy implores, the term has other meanings that fit within the context of this case. Black's Law Dictionary defines "custodian" as: "A person or institution that has charge or custody (of . . . property . . . or other valuables)." Black's Law Dictionary, Custodian (11th ed. 2019). Oxford English Dictionary defines the term as one "often in charge of a building when a landlord is absent." *In re U.S. for an Order Authorizing Roving Interception of Oral Commc'ns v. United States of America,* 349 F.3d 1132, 1143 (9th Cir. 2003). Merriam-Webster Dictionary defines the term as "one that guards and protects or maintains." *Szulik v. State St. Bank & Tr. Co.*, 935 F. Supp. 2d 240, 259 (D. Mass. 2013). Under these definitions, JLL, as the company with charge over the management of Union Station, is a custodian.

If the parties intended to limit a "custodian" to a bankruptcy context, the parties could have done so. Indeed, the other provisions surrounding the Custodian Provision include explicit references to Bankruptcy Law or the U.S. Bankruptcy Code when such a limitation was intended. (Rebibo Decl., Ex. A at § 11.22(B)(1)-(3), (5); Ex. C at § 11.22(B)(1)-(3), (5).) Clause 4, i.e. the Custodian Provision, contains no such limiting language. *See Ambac Assurance Corp. v. U.S.*

*Bank Nat'l Ass'n*, 21-70-cv, 2021 WL 6060710, at *4 (2d Cir. Dec. 20, 2021) ("[W]e decline [plaintiff's] invitation to imply terms that the parties did not expressly negotiate themselves."); *Patton v. Egan*, No. 12 Civ. 2500 (LGS), 2014 WL 4652489, at *6 (S.D.N.Y. Sept. 18, 2014) ("Plaintiffs could have included this concept in the definition, but did not do so."). The inclusion of "custodian" in a list with receivers, trustees, and examiners does not change the intentional decision by the parties not to limit the Custodian Provision to the bankruptcy context. Although used in bankruptcy proceedings as well, receivers also protect property during litigation, and trustees protect and preserve property for the benefit of another. Black's Law Dictionary, Receiver (11th ed. 2019); *id.* at Trustee. Without the limiting context provided in Clauses 1 through 3 and in Clause 5, the Custodian Provision should not be read to be limited to bankruptcies.[15]

None of Ashkenazy's remaining arguments purporting to justify connecting custodians to bankruptcy warrant a different result. The fact that the definition of "Bankruptcy Action" includes the word "custodian" (Motion at 10) does not mean that custodians are exclusively reserved for the bankruptcy context.[16] The side-by-side chart in Ashkenazy's Motion does nothing more than identify how "custodian" can be properly inserted in the bankruptcy context. (Motion at 11-12.) Moreover, the definition of "Bankruptcy Action" contains five subsections, whereas Springing

---

[15]     Ashkenazy cites to *Parrella v. Orange Rabbit, Inc.*, 20-CV-9923 (RA), 2021 WL 4462809, at *12 (S.D.N.Y. Sept. 29, 2021), *appeal dismissed*, 21-2740, 2022 WL 1310736 (2d Cir. Feb. 24, 2022), for the general proposition that "an unclear word or phrase should be determined by the words immediately surrounding it." (citation omitted) (Motion at 10.). In that case, the Court analyzed the order of the phrase "class or by multiple plaintiffs" to determine whether the clause prohibited claims brought by multiple franchisees. *Parrella*, 2021 WL 4462809 at *12. Here, the Court need only consider the definition of the term "custodian" to interpret the parties' intended meaning. Looking at the surrounding words as compared to the other clauses for Springing Recourse, nevertheless, supports Lender's position that the parties did not intend to limit the Custodian Provision to bankruptcy proceedings.

[16]     Ashkenazy cites to *Iroquois Master Fund, Ltd. v. Quantum Fuel Sys. Techs. Worldwide, Inc.*, No. 13 Civ. 3860, 2013 WL 4931649, at *2 (S.D.N.Y. Sept. 1, 2013) as support for applying the same meaning to a word throughout the contract. (Motion at 10.) That proposition was used to analyze a *defined* term, "Effective Price," defined as being the "effective net price." *Iroquois Master Fund*, 2013 WL 4931649, at *2. The Court determined that in all cases, therefore, the Effective Price was a "net" price. *Id.* The undefined term in that case—"discounts"— required expert testimony to resolve. *Id.* at *5. Here, "custodian" is undefined, requiring the Court to look to the word's plain meaning.

Recourse (although conveniently limited to five in Ashkenazy's Motion) contains eight subsections. Springing Recourse is not "substantially identical" to the definition of "Bankruptcy Action" (Motion at 12) to forcibly limit the Custodian Provision to a bankruptcy context. *Cf. Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 456 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016) (finding that creating a distinction between two provisions that contain the "very same requirement of a 'necessary suspension'" would result in "two entirely different meanings"). Recognizing that "custodian" can be used in different contexts does not change the meaning of "Bankruptcy Action" or take meaning from the Custodian Provision. Accordingly, the case law interpreting "custodian" in the bankruptcy context is irrelevant. (Motion at 13.) Finally, the interpretation of "custodian" is not aided by the definition of "Manager" in the Mortgage and Mezz Loan Agreements. (Motion at 14 n.12.)

The plain meaning of "custodian" supports Lender's first and second claims regarding Springing Recourse because JLL is in charge over the management of Union Station. However, if the term is not "entirely unambiguous," dismissal of the first and second claims is unwarranted at this time. *CapitalSource Fin. LLC v. Blaichman*, No. 09 Civ. 3283(LTS), 2010 WL 764300, at *2 (S.D.N.Y. Mar. 5, 2010) (denying motion to dismiss on claim for breach of recourse guaranty where contractual provisions at issue were not unambiguous as matter of law).

## CONCLUSION

For the foregoing reasons, Ashkenazy's motion to dismiss should be denied in its entirety.

Dated: New York, New York
       December 12, 2022

MORRISON COHEN LLP

By:   *Y. David Scharf*
      Y. David Scharf
      Kristin T. Roy
      Latisha V. Thompson
      Amber R. Will
      909 Third Avenue
      New York, New York 10022
      (212) 735-8600

*Attorneys for Plaintiff Kookmin Bank Co.,*
*Ltd.*, in its capacity as Trustee of KTB CRE
Debt Fund No. 8, a Korean Investment
Trust, by its agent in Korea, Daol Fund
Management Co., and by its agent in United
States, Rexmark Holdings, LLC d/b/a
Rexmark