UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KOOKMIN BANK CO., LTD., in its capacity as Trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its Agent in the United States, REXMARK HOLDINGS LLC d/b/a REXMARK,<br><br>    Plaintiff,<br><br>    v.<br><br>BEN ASHKENAZY,<br><br>    Defendant. | Civil Action No.:<br>1:22-cv-05802 (GHW) |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT BEN ASHKENAZY'S MOTION TO DISMISS THE AMENDED COMPLAINT

        David E. Ross
        David J. Mark
        Daniel J. Koevary
        Andrew W. Breland
        KASOWITZ BENSON TORRES LLP
        1633 Broadway
        New York, New York 10019
        Tel.: (212) 506-1700
        Fax: (212) 506-1800

        *Attorneys for Defendant Ben Ashkenazy*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................ II

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    Plaintiff's Springing Recourse Claims Must Be Dismissed .................................. 2

    II.    The Mezz Loan Was Satisfied by the Foreclosure Sale ........................................ 4

    III.    Plaintiff's Recourse Liabilities Claims Fail .......................................................... 6

        A.    The Amended Complaint Does Not—And Could Not Plausibly—Allege Damages Relating To The Mortgage Loan. .................................. 6

        B.    Plaintiff Has Not Alleged Liability for an Intentional Misrepresentation ................................................................................. 8

        C.    Plaintiff Has Failed to Plead Willful Misconduct or Gross Negligence .... 10

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
 18 N.Y.3d 675 (2012) ......................................................................................................... 10

*Atlantis Info. Tech., GmbH v. CA, Inc.*,
 485 F. Supp. 2d 224 (E.D.N.Y. 2007) .................................................................................. 7

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
 679 F. Supp. 2d 474 (S.D.N.Y. 2010) ............................................................................. 8, 9

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
 949 F. Supp. 2d 486 (S.D.N.Y. 2013) ................................................................................. 8

*Brown v. Lower Brule Community Dev. Enterprise LLC*,
 2014 WL 5508645 (S.D.N.Y. Oct. 31, 2014),
 *aff'd*, 606 Fed. Appx. 626 (2d Cir. 2015) ............................................................................. 9

*GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*,
 2008 WL 3891257 (S.D.N.Y. Aug. 21, 2008) ..................................................................... 6

*Geer v. Gates Chili Cent. Sch. Dist.*,
 321 F. Supp. 3d 417 (W.D.N.Y. 2018),
 *aff'd sub nom., Geer v. Emp. Health Referral Sys., Inc.*, 768 F. App'x 55 (2d Cir. 2019) ....... 9

*Hoyle v. Wiley*,
 2001 WL 1860957 (N.D.N.Y. Feb. 13, 2001) ..................................................................... 7

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
 309 F. Supp. 3d 100 (S.D.N.Y. 2018) ............................................................................. 8, 9

*KLS Diversified Master Fund, L.P. v. McDevitt*,
 507 F. Supp. 3d 508 (S.D.N.Y. 2020),
 *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) ................................................................ 5

*L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
 595 F.3d 458 (2d Cir. 2010) ................................................................................................ 3

*Lanmark Grp., Inc. v. New York City Sch. Const. Auth.*,
 148 A.D.3d 603 (1st Dep't 2017) ........................................................................................ 4

*Parrella v. Orange Rabbit, Inc.*,
 2021 WL 4462809 (S.D.N.Y. Sept. 29, 2021) ..................................................................... 3

*Szulik v. State Street Bank & Trust Co.*,
    935 F. Supp. 2d 240 (D. Mass. 2013) ...................................................................................3

*In re U.S. for an Order Authorizing Roving Interception of Oral Commc'ns v.*
    *United States of America*,
    349 F.3d 1132 (9th Cir. 2003) ..........................................................................................3, 4

Defendant Ben Ashkenazy respectfully submits this reply memorandum of law in support of his motion (the "Motion") to dismiss the Amended Complaint ("AC").[1]

## PRELIMINARY STATEMENT

Despite devoting the bulk of its AC to allegations that Ashkenazy breached Springing Recourse obligations and, thus, is liable for $500 million in damages, Plaintiff conspicuously devotes little of its Opposition to defending that specious claim. This is unsurprising and supports Ashkenazy's view that this suit was filed to exert economic pressure on him and to punish him in the credit markets rather than to vindicate any legitimate rights. The Court should dismiss Plaintiff's claims with prejudice.

Plaintiff's Opposition does nothing to change the outcome mandated by the Motion. For one, Plaintiff effectively abandons its $500 million springing recourse claim, raising absurd arguments that the Court already has skeptically examined and ignoring clear New York law on contract interpretation.

Plaintiff's other claims fare no better. Instead of responding to the arguments *actually made* in the Motion, Plaintiff merely argues undisputed propositions with no impact on the outcome. Plaintiff points to no authority—and there is none—that will permit it to obtain a double-recovery on the Mezz Loan following its complete satisfaction. And as to the remaining recourse obligations, Plaintiff does not seriously respond to any of Ashkenazy's arguments, instead citing to clearly distinguishable law that the Court should not rely on. Plaintiff's effort to

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the AC. As used herein, "Br." refers to Ashkenazy's Memorandum of Law in Support of the Motion [ECF No. 35]. "Opp." refers to Plaintiff's Opposition to the Motion [ECF No. 37].

use this case for an improper purpose should be recognized for what it is, and all of Plaintiff's claims should be dismissed.[2]

## ARGUMENT

### I. PLAINTIFF'S SPRINGING RECOURSE CLAIMS MUST BE DISMISSED

In the Motion, Ashkenazy argued that the "Springing Recourse" provision was not triggered by Borrowers' and Ashkenazy's continued management of Union Station because Ashkenazy and his affiliates did not "consent[] to or acquiesce[] in or join[] in an application for the appointment of a custodian." Br. at 9-14. In particular, Ashkenazy argued that "custodian," based on the plain language of the Loan Agreements and traditional methods of contractual construction, must be limited to a person who takes control of Union Station in a bankruptcy or similar proceeding. In its Opposition, Plaintiff does not seriously contest this, instead pointing to inapposite cases and failing to respond to the thrust of the arguments. *See* Opp. at 21-25.

First, Plaintiff does not address and, thus, concedes, that neither Ashkenazy, nor any of his affiliates, consented to an application for a custodian, as is required for liability. *See* Br. at 14. No such application was made by Ashkenazy or anyone else. Instead, Plaintiff complains that Ashkenazy consented to an application by Amtrak that sought to maintain the *status quo* in relation to Union Station during the pendency of the Condemnation Action.

In claiming that such consent triggered the Springing Recourse provision, Plaintiff argues for a broad and near unlimited definition of "custodian" that is without basis in the text of the agreements. These arguments fail and, as Ashkenazy argued in the Motion, "custodian" should be, and is, limited by the words and provisions that surround it and other provisions of the

---

[2] Ashkenazy has not requested oral argument given the clarity of the issues, but of course welcomes the opportunity to address any questions the Court may have.

agreement and, thus, is unambiguous. *See* Br. at 9-12; *see also* Loan Agreements § 11.22(B)(4). The law is clear that the Court determines the meaning of contractual provisions based on the "entire agreement." *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010); *Parrella v. Orange Rabbit, Inc.*, 2021 WL 4462809, at *12 (S.D.N.Y. Sept. 29, 2021) ("[T]he meaning of an unclear word or phrase should be determined by the words immediately surrounding it." (cleaned up)). The provisions immediately surrounding the "custodian provision" all are clearly limited to bankruptcy and similar creditor/lender protection circumstances. Br. at 11-12. And, indeed, the "custodian provision" itself, which Plaintiff selectively quotes, includes references to a "receiver, trustee, or examiner," all of which are plainly terms related to bankruptcy or similar proceedings (such as the appointment of a receiver in connection with a foreclosure—which no one argues occurred here). Finally, the "custodian provision" closely tracks a provision contained in the "Bankruptcy Action" definition in the Loan Agreements. *See* Br. at 11-12. Thus, the custodian provision, which triggers the same obligations as the provisions that surround it, must be interpreted similarly.

The two cases cited by Plaintiff also are readily distinguishable. Neither even considers the impact of the language similar to the bankruptcy-related provisions in the Loan Agreements here, nor do any adopt the unlimited definition of "custodian" that Plaintiff suggests. First, in *Szulik v. State Street Bank & Trust Co.*, 935 F. Supp. 2d 240 (D. Mass. 2013) (cited at Opp. at 22), the court rejected the definition Plaintiff suggests, and found that the responsibilities of the "custodian" in that case (a bank which neither party contested was, in fact, a "custodian") were limited by the contract. *See id.* at 258-59. Plaintiff's second case, *In re U.S. for an Order Authorizing Roving Interception of Oral Commc'ns v. United States of America*, 349 F.3d 1132 (9th Cir. 2003) (cited at Opp. at 22), also supports Ashkenazy's position. There, the Ninth

3

Circuit considered whether a company that manufactured automobile technology could be a "landlord, custodian or other person" capable of assisting law enforcement with interception of communications. *Id.* at 1141. The court determined that the company could be such an "other person," relying on the definitions of "custodian" and "landlord." *Id.* at 1143. Just as the Ninth Circuit limited "other person" by looking to the definitions of "custodian" and "landlord," the Court here should undertake a similar analysis and find the meaning of "custodian" is determined by the words that surround it in the agreements.

As the Court already recognized, using just the dictionary definitions of "custodian" divorced from the rest of the contract would produce absurd results. For example, the hiring of a "janitorial custodian" could trigger hundreds of millions of dollars of liability like what Plaintiff claims here. *See* Transcript of September 8, 2022 Conference [ECF No. 25] at 14:9-15:8. Plaintiff still has not provided any meaningful limiting principle to avoid that absurd result. *Lanmark Grp., Inc. v. New York City Sch. Const. Auth.*, 148 A.D.3d 603, 604 (1st Dep't 2017) ("A contract should not be interpreted to produce a result that is absurd"). Thus, the Court should find that the term "custodian" as used in Section 11.22(B)(4) of the Loan Agreements is limited to custodians appointed in a bankruptcy or similar judicial proceeding. There was no such appointment here, nor was any application for such an appointment made by anyone, and Plaintiff's Springing Recourse claim based on the provision should therefore be dismissed.

## II. THE MEZZ LOAN WAS SATISFIED BY THE FORECLOSURE SALE

The Motion argued that the plain text of the Loan Agreements and Guaranties, and the transcript of Plaintiff's foreclosure sale, make clear that the sale resulted in the satisfaction of all obligations in respect of the Mezz Loan. *See* Br. at 14-16. In its Opposition, Plaintiff does not dispute Ashkenazy's argument that Plaintiff bid the full amount of the Debt at the foreclosure

4

sale but instead addresses "straw man" arguments that Ashkenazy did not make. *See* Opp. at 9-14. Because Plaintiff has no response to Ashkenazy's arguments, dismissal of all of Plaintiff's claims related to the Mezz Loan is appropriate.

To be clear, Ashkenazy does not dispute 1) that the Loan Documents provide that the lender may pursue both or either the Mezz Loan collateral or the Guarantor, without requiring one or the other to be pursued first, *see* Opp. at 13-14, and 2) that the Loan Documents definition of "Debt" includes more than the principal due on the Loan, *see* Opp. at 9-11.[3] Indeed, Ashkenazy made the latter point in his Opening Brief. *See* Br. at 15.

The primary authority on which Plaintiff relies is *KLS Diversified Master Fund, L.P. v. McDevitt*, 507 F. Supp. 3d 508, 547 (S.D.N.Y. 2020), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022) ("*KLS*"). In *KLS*, the lender had not conducted a foreclosure sale and the guarantor was therefore not entitled to credit the value of the lender's collateral. Here, in contrast, the lender made the election to acquire the collateral for the full amount of the Debt. Plaintiff also asserts, based on *KLS*, that all conceivable costs, including those incurred after the Foreclosure Sale, are covered by the Guaranties. Not so. Because the lender in *KLS* did not conduct a foreclosure sale, the court had no occasion to address that question. And, Plaintiff also omits that the guaranty in that case included that the guarantor's obligations "shall continue in effect notwithstanding any payment or performance of the Guaranteed Obligations by [Borrower]." *See id.* at 547. There is no similar language in the Guaranty here.

Plaintiff's attempt to find such language here fails. The only provision to which Plaintiff points provides that Ashkenazy's liability for breach of the Guaranty and enforcement thereof

---

[3] There is no dispute that the principal amount of the loan was $100 million and that Plaintiff bid $140,535,334.53 at the foreclosure sale, including interest and all other amounts due and collectable. *See* Transcript of Foreclosure Sale, ECF No. 24-6, at 15:14-21, 18:19-24.

5

"shall survive the payment and performance of the Guaranteed Obligations." *See* Opp. at 11 (citing Guaranty Section 1.7). While the *KLS* guaranty allowed the guarantor to be liable for recourse payments even after foreclosure or other claim on the collateral, the Guaranty here provides that only liability that survives payment of the Debt is that for breach of the Guaranty itself, not continuing recourse liability under the Loan Agreements.[4]

In short, having bid the full amount of the Debt at the foreclosure sale, Plaintiff is not entitled to any additional recovery on the Guaranty.[5]

### III.  PLAINTIFF'S RECOURSE LIABILITIES CLAIMS FAIL

#### A.  The Amended Complaint Does Not—And Could Not Plausibly—Allege Damages Relating To The Mortgage Loan.

As described in the Motion, Plaintiff does not allege any plausible Borrower Recourse Claims under the Mortgage Loan. All of the recourse events alleged in the third cause of action arose following the commencement of the Condemnation Action on April 14, 2022, which vested title to the leasehold interest in Amtrak with the result that on and after that date the Mortgage Lender has no interest in Union Station. Accordingly, all of the later actions by Borrowers alleged with respect to the control and management of Union Station could not have caused any damage to the Mortgage Lender. Br. at 17-20.

---

[4]  Similarly, Plaintiff's citation to the Recourse provisions (Opp. at 2, 10-11) is without merit. Under those provisions all or some portions of the Debt may become recourse under certain circumstances but they do not create additional Debt.

[5]  Similarly, there is no merit to the position that because Ashkenazy continued to contest the validity of the Foreclosure Sale in a related action, he cannot argue this position here. Plaintiff's allegation that the Foreclosure Sale was effective must be assumed on this motion. And the sole case Plaintiff cites on this issue, *GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*, 2008 WL 3891257 (S.D.N.Y. Aug. 21, 2008), is inapposite. There, the amount of the claim against the borrower was not set, preventing the court from adjudicating what, if anything, remained for the Guarantor to pay. *Id.* at *3. Here, the amount recovered in the Foreclosure Sale is set and, by the admission of Plaintiff's representative, constituted all amounts due on the Mezz Loan. *See* Transcript of Foreclosure Sale, ECF No. 24-6, at 15:14-21, 18:19-24.

In its response, Plaintiff does not dispute that the effect of the condemnation was to deprive the Mortgage Lender of any interest in Union Station.[6] Accordingly, Plaintiff's contention that alleged misrepresentations by Borrowers or Ashkenazy concerning their right to manage Union Station was in "connection with" the Mortgage Loan, Opp. at 16, is simply wrong and is not supported by Plaintiff's pleadings. At the time these alleged misrepresentations were made, the Mortgage Borrower had no interest in Union Station and the alleged misrepresentations and misconduct could have no conceivable impact on the Mortgage Loan. Thus, none of the misrepresentation allegations in paragraph 121 of the Amended Complaint, which concern the right to manage USI and/or Union Station,[7] allege a viable claim against Ashkenazy. The same is true of the misconduct allegations of paragraph 123 of the Amended Complaint. They all concern actions allegedly undertaken by the Borrowers or Ashkenazy to interfere with the Mezz Lender's efforts to take control of Union Station. Thus, although Plaintiff alleges generally that Ashkenazy misrepresented his "control and authority over USI when Lender properly exercised its rights and remedies explicitly provided by the Mortgage Loan agreement," AC ¶123(g), Plaintiff does not allege any actual exercise of rights by the

---

[6] Although Plaintiff observes that the title to Union Station could revert to USI in the event that the condemnation court determines at some future date that Amtrak acted outside of its statutory authority, Opp. at 17, Plaintiff's claim based on such a hypothetical future event is a contingent claim and does not assert a present claim for relief. *Atlantis Info. Tech., GmbH v. CA, Inc.*, 485 F. Supp. 2d 224, 234 (E.D.N.Y. 2007) (holding plaintiff cannot make a speculative claim that did not exist at the time the complaint was filed.); *Hoyle v. Wiley*, 2001 WL 1860957, at *2 (N.D.N.Y. Feb. 13, 2001) ("Courts will find a case to lack ripeness when it "involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all.").

[7] The only possible exception is Paragraph 121(j) which alleges a misrepresentation based on the allegation that Borrowers' counsel struck language from a stipulation regarding Lender' attorney-in-fact rights under Section 5.2.2 of the Mortgage Loan Agreement. However, striking language from a proposed stipulation that was never executed, does not represent any assertion of fact and could not be a basis for a misrepresentation claim.

"Lender" under the Mortgage Loan Agreement.  Accordingly, Plaintiff's third cause of action does not state a claim based on the Mortgage Loan and must be dismissed.

### B. Plaintiff Has Not Alleged Liability for an Intentional Misrepresentation

In the Motion, Ashkenazy asserted that Plaintiff must—but did not—sufficiently plead its claims under Rule 9(b), including by alleging reliance on any alleged "misrepresentations" since Plaintiff never believed them to be true.  *See* Br. at 21-23.  Plaintiff's Opposition argues only that such pleading is not required.  *See* Opp. at 17-19.  This assertion is wrong.

Plaintiff's Opposition repeatedly asserts that Ashkenazy conflates "intentional misrepresentation" with "fraud," despite the terms being used disjunctively in the Loan Agreements.  *See* Opp. at 19.  However, whether Plaintiff's claim is for fraud or some other form of misrepresentation, pleading in compliance with Rule 9(b), including pleading reliance, is required.  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 949 F. Supp. 2d 486, 508 (S.D.N.Y. 2013) (explaining "[n]egligent misrepresentation is a type of fraud and, as such, is subject to Rule 9(b)'s heightened pleading standard").  Plaintiff makes no effort to argue that its claims comply with the heightened standard in Rule 9(b).

The cases Plaintiff cites are of no aid to its position.  In asserting that Plaintiff need not meet the heightened standard, Plaintiff points to *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100 (S.D.N.Y. 2018) and *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474 (S.D.N.Y. 2010).  But, in those cases, there were no claims for breach of a prohibition on "misrepresentations" as there is here.  In *Hudson Bay*, for example, the defendant allegedly made a specific warranty in the contract that it had not entered into other transactions with third-parties during a certain time period.  *Hudson Bay Master Fund*, 309 F. Supp. 3d at 113.  When that warranty was proven false, the Court held that a breach of contract

8

claim, and not a fraud claim, was appropriate. *Id.* at 115.  Similarly, in *B & M Linen*, the defendant made specific representations about the ability to return defective products and perform maintenance, and "fraud and intentional misrepresentation" claims were duplicative of claims for breach of these explicit obligations. *B & M Linen*, 679 F. Supp. 2d at 481.  Contrary to the facts of those cases, here the alleged breach of the contract is based on "fraud or intentional misrepresentation," the pleading of which requires particularity, including reliance. *Brown v. Lower Brule Community Dev. Enterprise LLC*, 2014 WL 5508645, at *5, 7-8 (S.D.N.Y. Oct. 31, 2014) (dismissing claim based on language similar to the Misrepresentation Provision), *aff'd*, 606 Fed. Appx. 626 (2d Cir. 2015).  Indeed, *B & M* makes a similar point. *B & M Linen*, 679 F. Supp. 2d at 481 ("Not only must a complaint plead fraud or misrepresentation that is independent of a breach of contract; it must also plead fraud 'with particularity.'").

Plaintiff's misrepresentation claim also fails because none of the alleged misrepresentations were statements of fact.  In the Motion, Ashkenazy argued that liability based on misrepresentation—whether fraudulent or negligent—must be statements of fact, and that assertions of a legal position in Court and in the course of litigation could not satisfy this requirement.  Br. at 22.  Plaintiff does not address this point and therefore concedes it.[8]

---

[8] Plaintiff responds (Opp. at 19) to Ashkenazy's assertion of litigation privilege (Br. at 22), by arguing that breach of contract claims are excluded from the application of the litigation privilege.  While this may be true, it misses the point.  Alleged "misrepresentations" made to a Court are immunized from liability under any understanding of litigation privilege. *Geer v. Gates Chili Cent. Sch. Dist.*, 321 F. Supp. 3d 417, 423 (W.D.N.Y. 2018) ("It has long been established under New York law that statements uttered in the course of a judicial proceeding are absolutely privileged, as long as such statements are material and pertinent to the questions involved in the proceeding.") (internal citations omitted), *aff'd sub nom., Geer v. Emp. Health Referral Sys., Inc.*, 768 F. App'x 55 (2d Cir. 2019).

### C. Plaintiff Has Failed to Plead Willful Misconduct or Gross Negligence

Finally, Plaintiff argues that it adequately has pleaded willful misconduct or gross negligence since he "intentionally thwarted Lender's exercise of rights." *See* Opp. at 20-21. In making this argument, Plaintiff ignores the context of those efforts, which must be considered to determine whether Ashkenazy's actions evince "a reckless indifference to the rights of others." *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675, 683 (2012).

Ashkenazy's purportedly willful or grossly negligent actions were taken while the rights of the parties were subject to active litigation, both in this Court and in the Condemnation Action in Washington, D.C. Plaintiff does not allege, nor could it, that Ashkenazy was litigating in bad faith. Nor does Plaintiff allege that Ashkenazy ever disregarded any order of any Court about the rights of the parties. Instead, Plaintiff's claim that Ashkenazy interfered with its rights is an attempt to punish Ashkenazy for his assertion of litigation rights in other courts and for the refusal of other courts to grant Plaintiff the relief it sought. For example, Plaintiff complains that Ashkenazy intentionally interfered with Plaintiff's rights by continuing to manage Union Station through JLL and by litigating that right both in this Court and in D.C. But Plaintiff ignores that it filed a motion in the Condemnation Action seeking adjudication of these actions, which the Court declined to decide, and to date has continued to do so. Plaintiff has pointed to no negligent or bad faith action by Ashkenazy and, thus, this claim must fail.

### CONCLUSION

For the foregoing reasons, the Court should grant Ashkenazy's Motion in its entirety and dismiss Plaintiff's Amended Complaint with prejudice.

Dated: December 19, 2022        KASOWITZ BENSON TORRES LLP

                                By:   /s/ *David E. Ross*

David E. Ross  
David J. Mark  
Daniel J. Koevary  
Andrew W. Breland  
1633 Broadway  
Tel.: (212) 506-1700  
New York, NY 10019  
dross@kasowitz.com  
dmark@kasowitz.com  
dkoevary@kasowitz.com  
abreland@kasowitz.com  

*Attorneys for Defendant Ben Ashkenazy*
